631 A.2d 772

**Debra A. AGRESTA, Administratrix of the Estate of Samuel Jerome Agresta, Deceased and Debra Agresta, P/NG and Samuel Jerome Agresta, Jr., a minor and Anthony R. Agresta, a minor**

v.

**Police Officer James GILLESPIE, Badge No. 2237, Police Officer Thomas Fitzpatrick, Badge No. 2180 and Detective Al Donan a/k/a Al Doman, Badge No. 7776, Detective William McCloskey, Badge No. 9242 and City of Philadelphia, Appellants.**

Commonwealth Court of Pennsylvania.

Argued May 10, 1993.

Decided Aug. 31, 1993.

232

Michael F. Eichert, Divisional Deputy, Appeals, for appellant, City of Philadelphia.

Edward A. Rudley, for appellees.

234

Before DOYLE and PELLEGRINI, JJ., and KELTON, Senior Judge.

PELLEGRINI, Judge.

The City of Philadelphia (City) appeals from a judgment entered following a jury verdict in the Court of Common Pleas of Philadelphia County (trial court) holding that the City and its agents' negligence were responsible for the wrongful death of Samuel Jerome Agresta (Agresta).[1]

Agresta owned a telecommunications business and employed Thomas Spurka (Spurka) as a salesman.[2] On the afternoon of December 19, 1985, Agresta telephoned his wife from his car telephone, indicating that he believed Spurka to have stolen equipment from the company warehouse that he intended to retrieve. He proceeded to the company warehouse and engaged in a confrontation with Spurka which turned into a scuffle. After this altercation was broken up by two maintenance workers who witnessed the incident, Agresta left the building and Spurka telephoned police, alleging that Agresta had tried to kidnap him at gunpoint.

Based upon Spurka's complaint, police decided to arrest Agresta. Proceeding without a warrant or further investigation, police had Spurka telephone Agresta and arrange a meeting between the two where police would be waiting. Agresta agreed to a meeting, but insisted that it take place in the parking lot of the Oregon Diner in South Philadelphia. Four officers were detailed to effect the arrest using two unmarked police cars. In one car were Officers Gillespie and Fitzpatrick, both uniformed patrolmen. In the second car were two non-uniformed detectives, Doman and McCloskey. It was planned that the uniformed officers were to identify

1. At trial, the parties stipulated that the officers involved were acting on behalf of the City, and that the City would assume responsibility for the officers' actions.

2. The facts are set out in light most favorable to the Estate as the verdict winner, giving it the benefit of every reasonable inference of fact arising therefrom and resolving any conflict of evidence in its favor. *Moure v. Raeuchle*, 529 Pa. 394, 396, 604 A.2d 1003, 1007 (1992).

themselves and arrest Agresta while the detectives supervised from their car.

Agresta arrived for the meeting at approximately 7:20 p.m. and parked his car adjacent to Spurka's which was parked in the middle of the lot. The non-uniformed detectives immediately drove in front of Agresta's car to block any escape. Deviating from the original plan, Detective Doman jumped out of the unmarked car and rushed Agresta's. Agresta reacted by speeding off, striking the unmarked police car in the process. As Agresta made his way out of the lot, Detective Doman fired at his car four times, shattering the rear window and striking Agresta in the right shoulder.

The two uniformed officers who were supposed to have made the arrest gave chase in their unmarked car without using any lights or sirens. They pursued Agresta through the streets of South Philadelphia until Agresta came upon a marked police van parked diagonally across Delaware Avenue. Upon reaching the police van, Agresta slowed almost to a stop. However, the pursuing unmarked car struck Agresta's and he began to speed up again. Seconds later, the officers in pursuit fired their weapons from the windows of the unmarked car and fatally wounded Agresta with a shotgun blast to the head.

Agresta's estate and widow (Estate) brought a wrongful death and survival action against the City. At trial, while there were many fact witnesses,[3] the only witness to testify as to the propriety of the police handling of Spurka's allegations and arrest was Dr. James J. Fyfe, a former Police Lieutenant in the New York City Police Department and presently a Professor of Criminal Justice at American University.[4] With regard to the handling of Spurka's allegations against Agresta,

---

**3.** In addition to Agresta's widow and children, testimony was received from each of the four police officers named in the suit, as well as Spurka's probation officer, the Police Captain who made the decision to arrest Agresta, the officer driving the police van parked on Delaware Avenue, and the officer who was present with Agresta's father during the chase. In addition, expert testimony was received from an economist, ballistics' expert and physician.

**4.** The City did not call an expert to testify as to the proper standard of care that should be used in an incident of this nature.

he testified that the police did not follow the standard of conduct expected of police officers by failing to take certain steps to corroborate the allegations made by Spurka against Agresta before attempting the arrest.[5] He testified that the police should have made a criminal record check of Spurka and awaited the results to determine how much credence they should give his allegations, and based on that check, how to proceed with bringing Agresta into custody. If they had made that check, the investigating officer would have learned that Spurka had twice been convicted of felonies which would have suggested Spurka may have instigated the incident.[6] Dr. Fyfe also testified that the police should have sought to corroborate Spurka's story by interviewing the two persons who were known to have witnessed the altercation between Spurka and Agresta.[7] He also testified that the police should have contacted police from Agresta's home district to see if Agresta was known to them and to obtain some corroboration of Spurka's allegations before deciding to have Spurka arrange a meeting with Agresta so that Agresta could be

**5.** Dr. Fyfe testified:
Well, the standard of care is that police officers don't make an arrest unless they're pretty convinced that its more likely than not that the crime that's alleged occurred, and in those circumstances, what they have to do is build as much evidence as possible to corroborate the otherwise unsubstantiated statement of an individual or anyone else who came to the cops and said Joe tried to kidnap me could convince the cops to go make an arrest just on that basis. (R.R. 867a).

**6.** Specifically, Dr. Fyfe gave his opinion that:
The job of the police is then to find out what happened and who they're dealing with and one of the first steps the police take is to try and establish a credibility of this individual and to find out who he's talking about.
So the first step that any reasonable, careful, competent investigator would take would be to run a name check on both the complainant and on the individual he's accusing. (R.R. 868a).

**7.** On direct, Dr. Fyfe stated:
Part of the standard of care is corroborating an individual's testimony or statements by getting the statements of other people, and one of the first things that detectives should be doing is going to the scene of the crime and finding out who else may have seen what occurred and getting their version of the events, and I saw no evidence that that was done here. . . . (R.R. 871a).

arrested.[8] If the police had obtained the information by following proper police procedures, it was Dr. Fyfe's opinion that the reasonable course of conduct for the police would have been to issue an arrest warrant and request Agresta to turn himself in for questioning rather than stage an ambush-style arrest.

As to the method used in making the arrest, Dr. Fyfe again opined that the police did not follow proper procedure. He testified that it was negligent for the police to attempt to arrest Agresta by having the person with whom he had an altercation set up a meeting in a dark parking lot. Dr. Fyfe stated that it was improper for police not to attempt to communicate with Agresta prior to attempting the arrest and to use non-uniformed officers in the attempt. Further, Dr. Fyfe testified that it was improper for police to use an unmarked vehicle without any lights or sirens to chase Agresta, and during the chase, the police failed to keep a safe distance from Agresta's car in that the police car hit Agresta's car just as he slowed down to stop.

> The trial court charged the jury as to negligence as follows:
> [L]et's talk about this specific case. Now, if you find that the police in this case, meaning the course of conduct started at the moment when a complainant first came to a policeman and started something, until Samuel Jerome Agresta was shot and, as a result thereof, died, if you believe that the police were negligent and that their negligence was the legal cause of the death of Samuel Agresta, then the City will be liable. . . .
> What do we mean by negligent? Careless. Careless meaning doing something that a reasonably careful person would

8. In response to a question as to proper procedure in dealing with a suspect with whom police were unfamiliar, Dr. Fyfe testified:

> [T]hey should have the 3rd district to try and corroborate any of Mr. Spurka's allegations against Mr. Agresta, but when they decided to go further, they should have contacted the 3rd district just to advise them that they were planning an operation within their territory, and to ask them what they knew about the Agrestas; and from what I understand, the Agrestas were well known to the cops in the 3rd district as nice people. (R.R. 875a).

not do under the circumstances, or failing to do something that a reasonably careful person would have done under the circumstances.

Everybody is required to behave with reasonable care, but in addition, when you're dealing with police, you have to judge what they did or didn't do based upon what you would expect from a reasonably careful police officer—when I say officer, I mean everyone in the chain, everyone connected with the police department—what a reasonably careful person would have done under those circumstances as they existed. Starts at the beginning and goes all the way through. (R.R. 1039a–1040a).

The jury found the City negligent and awarded damages in the amount of $4.8 million.[9] The City filed a motion for a new trial, as well as a motion for judgment notwithstanding the verdict (n.o.v.). Both were denied by the trial court and this appeal followed.

## I.

The City initially contends that the trial court erred in refusing to grant a compulsory non-suit at the close of plaintiff's case, because recovery is barred by the immunity conferred by the Political Subdivision Tort Claims Act, 42 Pa.C.S. §§ 8541–8564. Whether the City is immune is controlled by the effect on this action of the City's repeal of Chapter 21–700 of the Philadelphia Code in force between 1971 and 1990. Chapter 21–700 prohibited the City from pleading immunity in cases arising out of police negligence. On December 4, 1990, this section was repealed,[10] and the repealer extended to all pending cases. The City argues that because the instant case had not yet come to trial and was pending, once Chapter 21–700 was repealed, the bar to pleading immunity was removed; and alternatively, because immunity is never waived and can be raised at any time, the trial court should have granted it

9. The City is not challenging the amount of the verdict.

10. City of Philadelphia Bill 1057 (Bill of Dec. 4, 1990).

compulsory non-suit. *See, e.g., In re Upset Sale of Properties,* 522 Pa. 230, 560 A.2d 1388 (1989).

We addressed that contention in *City of Philadelphia v. Patton,* 148 Pa.Commonwealth Ct. 141, 609 A.2d 903 (1992), and *City of Philadelphia v. Gray,* 133 Pa.Commonwealth Ct. 396, 576 A.2d 411 (1990), *petition for allowance of appeal granted,* 526 Pa. 654, 586 A.2d 923 (1991), where we held that governmental immunity did not apply. In those cases, we held that the City could not give retroactive effect to the repealer of Chapter 21–700 to those cases where the cause of action had accrued while the Chapter was still in effect. *Patton,* 148 Pa.Commonwealth Ct. at 146, 609 A.2d at 906.[11] While it is true that the matter had not been brought to trial when the repealer was enacted in 1990 and was "pending", because the cause of action had accrued in December of 1985 when Chapter 21–700 was in effect, recovery is not barred by the Political Subdivision Tort Claims Act.

## II.

The City contends that the trial court improperly denied its motion for judgment n.o.v., because no cause of action exists for a negligent police investigation that led to its decision to arrest Agresta, and that none exists for the negligent apprehension of a criminal suspect if there was probable cause to make the arrest. For there to be a cause of action in tort, plaintiff must establish:

1. a recognized legal duty exists requiring the defendant to conform to a certain standard of conduct;

2. failure to conform to that standard of conduct;

3. a causal connection between that conduct and injury; and

4. compensable harm to another.

*Morena v. South Hills Health System,* 501 Pa. 634, 462 A.2d 680 (1983); *Rankin v. Southeastern Pennsylvania Transpor-*

---

**11.** Under the *Patton* rationale, the repealer, extended to cases in which the cause of action had already accrued, would extinguish a vested right and offend due process. 148 Pa.Commonwealth Ct. at 146, 609 A.2d at 906.

*tation Authority,* 146 Pa.Commonwealth Ct. 429, 606 A.2d 536 (1992); *Alumni Association v. Sullivan,* 369 Pa.Superior Ct. 596, 535 A.2d 1095 (1987) *aff'd* 524 Pa. 356, 572 A.2d 1209 (1990). Prosser Law of Torts, § 30 at 143 (4th ed. 1971). Absent some form of tort immunity, governmental entities are liable to the same extent as private parties for their negligence. *Ayala v. Philadelphia Board of Education,* 453 Pa. 584, 305 A.2d 877 (1973).

The City contends that the trial court erred in charging and allowing evidence to go to the jury that its failure to investigate Spurka and his allegations led, in part, to Agresta's death.[12] When it investigates a criminal complaint, the City argues that no liability can attach for its negligent investigation because it owes no duty to any particular individual to investigate criminal activity, only to the public at large. Absent a duty, it then argues that it was error for the trial court to allow evidence that its procedures in investigating Spurka's complaint did not conform to the appropriate standard of conduct that police should exercise in handling those types of complaints.

 Negligent investigation by the police of criminal activity complaints does not give rise to a cause of action for damages incurred as a result of that negligence. In *Thomas v. City of Philadelphia,* 133 Pa.Commonwealth Ct. 121, 124–25, 574 A.2d 1205, 1206 (1990), *petition for allowance of appeal denied,* 527 Pa. 659, 593 A.2d 429 (1990), we explained no cause of action existed for negligent police investigation because:

> Our Courts have been reluctant to impose a general duty of care upon government employees to specific persons where the alleged duty was simply the protection of the public at large—i.e., society—from third-party criminal acts. *Moore v. Department of Justice* (now *Office of General Counsel* ),

**12.** Our scope of review, when examining a denial of judgment n.o.v., is whether in viewing the record in a light most favorable to the verdict winner and granting him every inference, there is sufficient competent evidence to sustain the verdict. *Wenrick v. Schloemann Siemag Aktiengesellschaft,* 523 Pa. 1, 564 A.2d 1244 (1989).

114 Pa.Commonwealth Ct. 56, 66, 538 A.2d 111, 116 (1988), appeal dismissed, *Moore v. Reid,* 523 Pa. 418, 567 A.2d 1040 (1990). There is generally no duty resting on a municipality or other governmental body to provide police protection to any particular person, *Melendez v. City of Philadelphia,* 320 Pa.Superior Ct. 59, 64, 466 A.2d 1060 (1983). [A]n individual's injury resulting from a police officer's failure to prevent or ameliorate a crime must be redressed through public prosecution, and not in a private suit for monetary damages. *Morris v. Musser,* 84 Pa.Commonwealth Ct. 170, 174, 478 A.2d 937, 939 (1984) (citation omitted).

*See also Caldwell v. City of Philadelphia,* 358 Pa.Superior Ct. 406, 517 A.2d 1296 (1986), *petition for allowance of appeal denied,* 517 Pa. 597, 535 A.2d 1056 (1987).

■ While *Thomas* and other cases have held that no cause of action exists when police negligently investigate a criminal activity that allows a third party to injure someone, that is not the situation here. The "negligent investigation" under review in those cases dealt with the failure of the police to secure necessary information that would have prevented harm as a result of criminal conduct of a third party and not, as here, when the police negligently failed to follow accepted police practices to secure information leading to the course of conduct that ultimately led to Agresta's death. The failure to obtain necessary information before engaging in a course of conduct has always been actionable, e.g., a doctor's failure to take a medical history. *Incollingo v. Ewing,* 444 Pa. 263, 282 A.2d 206 (1971). As such, it was proper for the trial court to charge and it was proper for the jury to consider as part of the police's overall conduct whether their failure to secure information caused, in part, Agresta's death.

■ Alternatively, the City argues that even if its failure to properly investigate Spurka's complaint was properly placed before the jury, once it had established that it had probable cause to arrest, which is undisputed, it fulfilled any duty it had to Agresta and cannot be held liable for any injuries that occurred during the arrest. While the police are authorized to

carry out an arrest without warrant once they have probable cause that a felony has taken place (Pa.R.Crim.P. 101.3), they are not relieved from carrying out that arrest in a non-negligent manner.

In *Everette v. City of New Kensington,* 262 Pa.Superior Ct. 28, 396 A.2d 467 (1978), the Superior Court recognized that the police had the duty to carry out arrests in a non-negligent manner. In that case, an action was brought for the wrongful death of a suspect when an officer's weapon went off during a frisk incident to an arrest. At issue on appeal was whether the trial court's instruction to the jury that a police officer had a duty to act with reasonable care during an arrest and must use "extraordinary care" when doing so with a loaded weapon was proper. While it was equally divided on the question of whether the "extraordinary care" standard was proper, the Superior Court was unanimous that a police officer owed a duty of reasonable care toward a suspect in making an arrest. *Id.* at 29, 32, 396 A.2d at 468, 473.

Other jurisdictions have come to similar conclusions when identifying a cause of action for negligent apprehension based upon the concept of foreseeability. In *Sparks v. City of Compton,* 64 Cal.App.3d 592, 134 Cal.Rptr. 684 (1976), the California Court of Appeals recognized that police could be held liable for injuries caused by a negligent arrest attempt. The court held that police were negligent when they stopped a motorist and exited their unmarked vehicle in a threatening manner, brandishing firearms and without identifying themselves, because it was foreseeable that such conduct would cause a motorist to flee in panic and create an unreasonably dangerous situation.

Similarly, in *Celmer v. Quarberg,* 56 Wis.2d 581, 203 N.W.2d 45 (1973) and *Poole v. City of Louisville,* 107 Ga.App. 305, 130 S.E.2d 157 (1963), those courts recognized that a cause of action in negligence exists when police, failing to act reasonably in apprehending a suspect, cause the suspect to flee and be injured. *See also Justin v. City of New Orleans,* 499 So.2d 629 (La.App. 4 Cir.1986), *writ denied,* 501 So.2d 232 (La.1987) (holding it reasonably foreseeable that a pedestrian would

attempt to flee and be subjected to danger when police breached the duty to act reasonably and accosted him from an unmarked car, at night, without sufficient identification).

■ Even if having probable cause does not protect it from liability in making arrests, the City contends that it exercised reasonable care because it was not "foreseeable" that their conduct in making the arrest would cause Agresta's reaction when confronted by the police. In *Department of Transportation v. Philips*, 87 Pa.Commonwealth Ct. 504, 519, 488 A.2d 77, 85–86 (1985), we stated that:

> Foreseeability is not an element used to determine whether negligent conduct was the proximate or legal cause of an accident but it is an element considered when determining the existence of negligent conduct. *Brown v. Tinneny*, 280 Pa.Superior Ct. 512, 421 A.2d 839 (1980). Negligent conduct, that is, an absence of ordinary care which a reasonable person would exercise under particular circumstances, results where a wrongdoer could have anticipated or foreseen the likelihood of harm to a person injured as a result of the wrongdoer's act. *Zilka v. Sanctis Construction, Inc.*, 409 Pa. 396, 186 A.2d 897 (1962). To determine whether the wrongdoer proximately or legally caused the injury giving rise to the negligence action, there must be a finding that the wrongdoer's allegedly wrongful conduct was a substantial factor in bringing about the accident, even though it need not be the only factor. *Majors v. Broadhead Hotel*, 416 Pa. 265, 205 A.2d 873 (1965). The fact that conduct might not reasonably be foreseen to result in a particular harm or cause harm in a particular manner that in fact occurred does not preclude liability. *Fredericks v. Castora*, 241 Pa.Superior Ct. 211, 360 A.2d 696 (1976).

*See also Carson v. City of Philadelphia*, 133 Pa.Commonwealth Ct. 74, 574 A.2d 1184 (1990). Whether something is foreseeable is a question for the jury to determine by all the facts and circumstances. *Little v. York City Earned Income Tax Bureau*, 333 Pa.Superior Ct. 8, 481 A.2d 1194 (1984).

Restatement (Second) of Torts, § 435; W. Prosser, Law of Torts, § 45 (4th ed. 1971); F. Harper and F. James, The Law of Torts, Vol. 2 § 20.2 (1956).

In this case, the jury determined that the police conduct in setting up an arranged meeting with Spurka in a dark parking lot with unidentified individuals (police detectives) charging Agresta's car led Agresta to the belief that harm was about to befall him, causing him to flee and causing the police to shoot and kill him. There is substantial evidence in the record that it was both foreseeable that that result would occur and that their wrongful conduct was a substantial factor[13] in causing Agresta's death. The jury's determination in finding the City liable is not one that is so contrary to the evidence that it shocks one's sense of justice so that a new trial is warranted. *See Burrell v. Philadelphia Electric Co.,* 438 Pa. 286, 289, 265 A.2d 516, 518 (1970). Accordingly, the court's denial of the City's request for a judgment n.o.v. was not in error.

## III.

The City also contends that the trial court erred in denying its motion for a new trial because certain statements admitted at trial were either irrelevant or inadmissible hearsay.[14]

## A.

■ The City first argues that the trial court erred in the admission of Mrs. Agresta's testimony concerning a telephone conversation she had with Agresta at approximately 3:30 p.m. on the day of the shooting because it was irrelevant. Mrs. Agresta testified that her husband had told her that he suspected Spurka of stealing equipment from his business and

13. *See* Restatement (Second) of Torts, § 431.

14. When the trial court denies motions for a new trial, we will not reverse, absent an error controlling the outcome of the case or an abuse of discretion where the ruling turns on the weight of the evidence. *Hannis v. Ashland State General Hospital,* 123 Pa.Commonwealth Ct. 390, 554 A.2d 574 (1989).

he intended to confront Spurka and fire him.[15] While the City concedes that this statement was relevant to Agresta's state of mind when he first confronted Spurka at the warehouse, it contends that it is irrelevant to his state of mind when he arrived for the second meeting some four hours later and was inadmissible.

Relevant evidence is that which tends to make a fact at issue more or less probable. *Gregg v. Fisher*, 377 Pa. 445, 105 A.2d 105 (1954). At issue in this case is whether Agresta was placed in a reasonable apprehension of danger when police sprung their ambush. Because Agresta considered Spurka to have stolen from him that day and they had an altercation that day, it is more probable that he considered Spurka to be in some form threatening, and when accosted by non-uniformed officers at a meeting set up by Spurka, he reasonably apprehended danger. The admission of this testimony was, therefore, not in error.

### B.

The City next argues that the trial court erred in permitting Agresta's wife to testify as to Agresta's father's declaration at his son's deathbed that "Tom's men killed my son" because the statement was hearsay, not within any exception. The trial court admitted the testimony, reasoning that since it was only offered to prove the father's state of mind, it was not hearsay.

Statements made and offered not for the truth of the matter contained in those statements, but rather only to circumstantially prove the declarant's state of mind, are not classified as hearsay. *In re Cunningham*, 517 Pa. 417, 438–439, 538 A.2d 473, 484 (1988). The father's statement was not offered to prove the matter asserted in the declaration, i.e., that Spurka's men had actually killed Agresta, was true. The entire point of the plaintiff's proof in this case was that police were negligent in having shot and killed Agresta. The only

---

15. We note that this testimony is non-hearsay offered for the decedent's state of mind and accompanied by a sufficient limiting instruction. *See, e.g., Commonwealth v. Goldblum*, 498 Pa. 455, 447 A.2d 234 (1982).

proposition which this statement could be used to prove would be the father's belief as to who was responsible. Such a statement does not come under the definition of hearsay because it does not go to establishing the truth of what was asserted. *Commonwealth v. Hess,* 378 Pa.Superior Ct. 221, 548 A.2d 582 (1988). Not being hearsay, it was not error for the trial court to allow this testimony.[16]

## C.

Finally, the City argues that the trial court erred in admitting the testimony of Officer Marsden, who arrived at Agresta's father's business minutes after the father had received a telephone call from Agresta during the chase. Officer Marsden testified that Agresta's father, in an angry, upset and loud manner, told him that Agresta had just called and was being chased by Spurka's "people". The City argues that the statement, being hearsay-on-hearsay, does not come within the "excited utterance" exception because the exciting event at issue, i.e., the chase, was not witnessed by the father as required by *Carney v. Pennsylvania R. Co.,* 428 Pa. 489, 240 A.2d 71 (1968).

When dealing with hearsay-on-hearsay, the statement in question must be examined at each level, and if at each level, the statement would be admissible, the combination will also be admissible. *Commonwealth v. Galloway,* 302 Pa.Superior Ct. 145, 448 A.2d 568 (1982). An analysis of the statement reveals two distinct levels of declarations. On the first level is Agresta's declaration to his father that he was being chased by Spurka's "people". This statement, evidencing Agresta's state of mind during the chase, is not hearsay for the same reasons that the contents of the earlier telephone conversation with his wife was not hearsay.

16. While we fail to see the relevance of the father's belief as to who was responsible for the death of his son, we will not address this issue because no relevancy objection was made either before the trial court or on appeal. Pa.R.A.P. 302(a); *Commonwealth v. Perry,* 403 Pa.Superior Ct. 212, 588 A.2d 917 (1991).

While the statement of Agresta's father to Officer Marsden repeating the contents of the call is hearsay,[17] the trial court allowed this testimony under the excited utterance exception to the hearsay rule. An excited utterance is one that is:

[A] spontaneous declaration by a person whose mind has been suddenly made subject to an overpowering emotion caused by some unexpected and shocking occurrence, which that person has just participated in or closely witnessed, and made in reference to some phase or occurrence which he perceived, . . . .

*Allen v. Mack*, 345 Pa. 407, 410, 28 A.2d 783, 784 (1942). For a statement to qualify under this exception, it must be shown that the declarant witnessed, perceived or participated in the shocking event himself. *Commonwealth v. Pronkoskie*, 477 Pa. 132, 383 A.2d 858 (1978). Where the City takes issue with the trial court is in what is to be considered the "shocking occurrence" at issue. The trial court viewed it to be the telephone call from Agresta, causing Agresta's father to make the "exited utterance". The City, on the other hand, argues that the shocking event was the chase itself, which the father neither witnessed nor participated in, and because Agresta's father did not participate in the chase, could not be the "shocking event" that would justify the father's statement to be admitted as an "exited utterance".

We agree with the trial court's analysis in this regard. The statement testified to by Officer Marsden was that the father stated that he had received a telephone call from Agresta in which Agresta said that he was being chased by Spurka's "people". The subject of this statement was the substance of the telephone call rather than the events which were taking place on Delaware Avenue. A telephone call from a son to a parent, indicating that the son was in danger, is undoubtedly a shocking occurrence, and given the short time between the

17. Hearsay is defined as an out-of-court statement, offered in court to prove the matter asserted in that statement. *Commonwealth v. Coleman*, 458 Pa. 112, 115, 326 A.2d 387, 389 (1974). The statement offered, that of Agresta's father to Officer Marsden, was offered to prove that the father had actually received such a telephone call and its contents during the chase.

declaration to Officer Marsden and the receipt of the call, the reaction was spontaneous enough to come within the excited utterance exception to the hearsay rule. Because the statement, therefore, was a combination of admissible non-hearsay and admissible hearsay under the excited utterance exception, it was not error for the trial court to allow it into evidence.

Accordingly, the order of the trial court denying the City's post-trial motions is affirmed.

## *ORDER*

AND NOW, this 31st day of August, 1993, the order of the Court of Common Pleas of Philadelphia County, dated February 13, 1992, is affirmed.