Schade v. Chiriaco

*David M. Kozloff,* for plaintiff.
*James R. Forry,* for defendant.

STALLONE, *J.,* January 5, 1996—On June 11, 1992, at approximately 6:30 p.m., the plaintiff, Justine A. Schade, was a passenger on the back of a motorcycle which, while in an allegedly "still" position, was struck in the rear by an automobile being driven by the defendant, Charles Chiriaco, on a ramp leading onto Interstate 176. The motorcycle was being operated by the plaintiff's friend, Michael James Hurley.[1] The plaintiff thereafter commenced this action for negligence to recover itemized special damages resulting from the injuries she sustained, including medical expenses in the amount of $3,716.85, lost wages in the amount of $3,720 and general unliquidated damages for past and future pain and suffering and past, present and future loss of enjoyment of life's pleasures.

Following a trial in which, inter alia, the jury was shown a videotape of the plaintiff performing as an exotic dancer at Cheeque's Nightclub, a jury returned a verdict in the plaintiff's favor and awarded her partial damages for medical expenses and lost wages. However, they did not award her any damages whatsoever for

---

1. Following commencement of this action, the defendant joined Hurley as an additional defendant in this case; however, at the conclusion of the defendant's case, this court granted Hurley's motion for a directed verdict.

past and future pain and suffering or past, present and future loss of enjoyment of life's pleasures. The breakdown of the jury's damage award as set forth on the special interrogatory form is as follows:

"Medical expenses                                    $3,552.85

Lost wages ($150.00 per day X 7 days)      1,050.00

Past and future pain and suffering                    0.00

Past, present and future loss of
enjoyment of life's pleasures                           0.00

TOTAL                                               $4,602.85"

The plaintiff has now filed a motion for post-trial relief pursuant to Pa.R.C.P. 227.1 raising the following issues for our review:

(1) The jury's damage award was contrary to the evidence introduced to the jury;

(2) The jury's damage award was contrary to the weight of the credible evidence presented to the jury;

(3) The jury's damage award was contrary to this court's instructions to the jury relative to past and future pain and suffering and past, present and future loss of enjoyment of life's pleasures; and

(4) This court erred in admitting the videotape of the plaintiff performing as an exotic dancer at Cheeque's Nightclub.

Inasmuch as the first three issues are related, we will address them together and then address the fourth issue separately.

Under Pennsylvania law, a jury verdict may be set aside as inadequate only when it appears to have been the product of passion, prejudice, partiality or corruption or where it clearly appears from the uncontroverted evidence that the amount of the verdict bears no reasonable relation to the loss suffered by the plaintiff.

*Kiser v. Schulte,* 538 Pa. 219, 648 A.2d 1 (1994). That is because the jury is free to believe all, some or none of the testimony presented by a witness. Therefore, only where the verdict is so contrary to the evidence that it "shocks the conscience of the court" may a new trial be granted. *Neison v. Hines,* 539 Pa. 516, 520, 653 A.2d 634, 636 (1995).

In this case, there is nothing to indicate that the jury's verdict was the product of passion, prejudice, partiality or corruption. Therefore, we must determine whether it appears from the *uncontroverted evidence*[2] that the verdict bears any reasonable relation to the loss suffered by the plaintiff.

In addition to the testimony of the plaintiff's treating physicians, Job F. Menges, M.D. and Mitchell A. Price, D.C., that the plaintiff had suffered a lumbar strain and sprain as a result of the rear-end collision, causing her to suffer pain in her lower back, the jury heard from the testimony of the defendant's expert witness, Ellis F. Friedman, M.D., that it was also his opinion that the plaintiff had sustained a lumbar strain and sprain which involved an irritation and stretching of the muscles and ligaments in her lower back and possibly even a cervical sprain and strain. (N.T., Videotaped deposition of Ellis F. Friedman, M.D., pp. 26, 43, 48, 50 and 52.) Furthermore, Doctor Friedman opined on cross-examination that this *was the type of injury that would normally be accompanied by pain:*

"Q. And—so that you agree that she sustained a sprain and strain of the lumbar area and possibly of the cervical area. Is that right?

"A. Yes.

---

2. All language which is italicized in this opinion is purely for emphasis only.

"Q. *You agree that the injuries that she sustained were painful for her?*

"A. Initially? Not in the neck because she told the emergency room physician that her neck didn't hurt. *Later on, her low back was sore. And I don't dispute that.*

"Q. Do you—

"A. *I think from this kind of injury, getting tossed off a motorcycle, I expect that she would have low back pain.* And quite frankly, I would expect she would have some neck pain. *And I would expect that she would be stiff and sore* and have difficulty in arising from a chair and in moving about and in lying down and standing up. I expect all of that. . . .

"Q. Would you also agree that the nature of the injury she sustained in her lumbar spine would have been capable of making her disabled from work; in other words, to cause her to be disabled from work during the period of her recovery?

"A. *The kind of injury she had, getting tossed off the motorcycle and rolling onto the ground, I think would lead to the kind of stiffness and soreness that absolutely would have kept her from doing this kind of dancing for a period of weeks.*

"There is no question in my mind. I don't see how she could have gone gyrating around with a sore back." (N.T., pp. 52 and 54.)

Therefore, we find that there is *uncontroverted evidence* in the record that the plaintiff suffered an injury as a result of the rear-end collision and that *she suffered pain* as a result of the injury. And, inasmuch as the injury involved a stretching of the muscles and ligaments in the plaintiff's lower back, *the injury which she suffered is the type of injury which human experience*

*teaches is accompanied by pain. Boggavarapu v. Ponist,* 518 Pa. 162, 167, 542 A.2d 516, 518 (1988).

Accordingly, this court is of the opinion that the jury's decision not to award the plaintiff any damages for *past* pain and suffering[3] and *past* loss of enjoyment of life's pleasures does not bear any reasonable relation to the evidence introduced at trial. Accordingly, we hold that the jury's verdict "shocks the conscience" of this court, thereby requiring the granting of a new trial.

The fourth and final issue which we must address is the admissibility of the videotape.

In March 1995, the defendant's insurance carrier hired a private investigator employed by Knight Investigations Inc., to make a secret surveillance videotape of the plaintiff while she was working at Cheeque's Nightclub located in Linden, New Jersey, where she is employed as an exotic dancer on a part-time basis. The purpose of making the videotape was to rebut the plaintiff's claims for damages for *future* pain and suffering and *present and future* loss of enjoyment of life's pleasures and to show that the plaintiff is not physically limited or restricted in any way and that she is presently able to dance without pain. The plaintiff filed a motion in limine seeking to preclude the introduction of the videotape. In her motion, she argued that:

(1) The tape was made without either her knowledge and consent or the knowledge and consent of Cheeque's

---

3. Although we are also of the opinion that the evidence may have entitled the plaintiff to recover for *future* pain and suffering and *present* and *future* loss of enjoyment of life's pleasures . . . that matter need not be addressed at this time other than in the context of the use of the videotape.

Nightclub and, therefore, its making constitutes a tortious invasion of her privacy;

(2) By having the tape made, Chiriaco engaged in theft of the plaintiff's entertainment services; and

(3) Because the plaintiff recovered sufficiently from her injuries to begin dancing again in July 1992, and the tape was not made until March 1995, the tape does not have any probative value and will be offered only to prejudice the jury against the plaintiff because of her profession.

After hearing oral argument prior to the taking of any evidence, this court ruled that the videotape was admissible and, therefore, could be shown to the jury.

At the outset, we note that the plaintiff's first two arguments do not address the admissibility issue.[4] As a result, we will confine our analysis to the following basic evidentiary issues of whether the videotape has any probative value and is, therefore, relevant to the factual issues in the case and, if so, whether the prejudicial effect of the videotape outweighs its probative value.

Under Pennsylvania law, evidence which tends to establish a fact which is material to the case or which tends to make a fact at issue more or less probable has probative value and is, therefore, relevant. *Agresta v. Gillespie,* 158 Pa. Commw. 230, 631 A.2d 772 (1993); *Maravich v. Aetna Life and Casualty Co.,* 350 Pa. Super. 392, 504 A.2d 896 (1986). Here, the plaintiff claims that the videotape does not have any probative value

---

4. In addition, the plaintiff failed to cite any case law holding that these arguments have any bearing upon the admissibility issue. Rather, those arguments may be the basis of a possible separate civil action against the insurance carrier by the plaintiff and/or the nightclub.

because she returned to performing in July 1992, a little more than two and one-half years prior to when the tape was made. Conversely, the defendant argues that the tape does have probative value because it directly rebuts her claims for *future* pain and suffering and *present and future* loss of enjoyment of life's pleasures.

This court is of the opinion that merely because the plaintiff acknowledged that she "recovered sufficiently from her injuries to begin dancing again in July 1992" . . . she did not at any time during the trial abandon her claims for damages for her alleged future pain and suffering and present and future loss of enjoyment of life's pleasures. Therefore, the videotape constituted evidence which may have tended to make those claims more or less probable in the minds of the jurors and enabled them to determine whether the plaintiff met her burden of proving that she is entitled to recover those damages. Accordingly, we reaffirm our prior ruling that the videotape had probative value and, therefore, constituted relevant evidence for the jury to consider in reaching its verdict.

The plaintiff also strenuously argues that the sole purpose for introducing the tape was, as she states at page 4 of her brief in support of her motion in limine, to: "influence the passions of the jurors and engender unfair bias against her because she is engaged in an occupation which many may find scandalous, immoral or distasteful."

The trial court has the discretion to exclude otherwise relevant evidence if its probative value is *substantially outweighed* by the danger of unfair prejudice. *Daset Mining Corporation v. Industrial Fuels Corporation,* 326 Pa. Super. 14, 473 A.2d 584 (1984). The term "prejudice" does not mean that it is detrimental to a party's case because all evidence offered against a party

is "prejudicial"; rather, it means that the evidence will have an *undue tendency* to suggest a decision on an improper basis. *Whyte v. Robinson,* 421 Pa. Super. 33, 617 A.2d 380 (1992); *Whistler Sportswear Inc. v. Rullo,* 289 Pa. Super. 230, 433 A.2d 40 (1981). In fact, any possibility of prejudice must be weighed against the need to provide the jury with "the entire picture" so that it can properly decide to what extent the plaintiff's injuries or damages are caused by the incident complained of. *Christy v. Darr,* 78 Pa. Commw. 354, 467 A.2d 1362 (1983).

In this case, the plaintiff has failed to establish that the videotape was prejudicial to her case. And, even assuming arguendo that it was, the prejudicial effect of admitting the videotape outweigh its probative value. As a matter of fact, this court took great pains to limit any prejudice to the plaintiff by requiring the defendant to dramatically shorten the length of the tape to be shown to the jury by deleting all scenes where the plaintiff was not dancing but mingling with the patrons and by deleting views of any other dancers where she, herself, was not also dancing. Therefore, we affirm our prior ruling that the probative value of the videotape outweighed the prejudicial effect, if in fact there was any, of the admission of the videotape into evidence.

And so, in accordance with the foregoing, we enter the following attached order.

ORDER

And now, January 5, 1996, the plaintiff's motion for post-trial relief is granted. Accordingly, a new trial is ordered relative to the issues of liability and damages.