**Byrne v. Mowad**

*Steven Margolis* and *Dennis Seeley,* for plaintiffs.
*Anthony Parker, Zachary Cohen* and *Ellen Schurdak,* for defendant.

MORAN, *J.,* February 4, 2005—

## STATEMENT OF REASONS

The defendant, Flory Tolino, has moved for summary judgment arguing inter alia that he was not the proximate cause of the accident, that the plaintiffs cannot recover for conscious pain and suffering based on plaintiffs' expert report, and that plaintiffs are not entitled to punitive damages.[1] The motion for summary judgment is before the court and is ready for disposition.

### Standard of Law

Pennsylvania Rule of Civil Procedure 1035.2 states that, where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. However, a non-moving party may not rest on averments contained in pleadings or answers to survive a motion for summary judgment if the burden of proof rests on the non-moving party. *Manzetti v. Mercy Hospital of Pittsburgh,* 565 Pa. 471, 776 A.2d 938, 945 (2001). In determining whether summary judgment should be entered, the record must be viewed in a light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *Manzetti, supra.* What follows is a recitation of

---

1. Tolino also raised the capacity of Daniel and Leila Byrne to sue in their individual capacities under the Wrongful Death Act. At oral argument and in their brief, plaintiffs explain the only damages sought to be recovered by the individuals are funeral expenses. In Tolino's reply brief, Tolino concedes that the estate and/or named beneficiaries are entitled to recover funeral expenses. 42 Pa.C.S. §8301(b) and (d). Therefore, we do not address this issue.

the relevant facts for this motion, construed in the required light.

## Statement of Fact

Kimberly Byrne was a passenger in a vehicle driven by Michael Mowad when it tragically was involved in an accident that took both their lives. It is undisputed that at the time of the fatal crash, the driver had a blood alcohol count (BAC) of 0.2 percent.

Earlier in the evening, several minors including Byrne and Mowad had attended an underage drinking party at Judith Claire McCloskey's house.[2] There are varied accounts as to how much alcohol Mowad consumed at the party and whether he was visibly intoxicated when he left. The only surviving passenger from the vehicle at the time of the accident testified that she did not believe Mowad was too intoxicated to drive. Pl.s' mem. of law in opp. of deft. Flory Tolino's mot. for summ. j. at exhibit D, dep. of Courtney Kiefer, pp. 40-46. In contrast, several witnesses at the party describe him as being drunk. See e.g., app. to deft.'s Flory Tolino's br. in supp. of mot. for summ. j. at exhibit Q, dep. of Kristin Engler at pp. 22-23.

At approximately 11:30 p.m., the police arrived at the house where the minors were consuming alcohol. Bryan Kiefer, Courtney Kiefer, Byrne, and Mowad were not apprehended by the police. Instead, these four individuals fled the scene in Mowad's vehicle.

---

2. McCloskey is the adult mother of two of the minors who attended the party and a defendant in this action. A jury convicted McCloskey of three counts of involuntary manslaughter arising out of her knowledge of the party and the accident that occurred. See Commonwealth v. McCloskey, 835 A.2d 801 (Pa. Super. 2003).

When the Mowad vehicle was traveling south on Mount Pleasant Road, it was involved in a sideswipe accident with defendant, Flory Tolino. At the time of the accident, shortly after midnight, Tolino was driving a yellow Mustang. Dep. of Tolino at pp. 7-8, app. T. Tolino testified that the sideswipe accident occurred when Mowad's vehicle negotiated the curve in the road and crossed into his lane of travel. *Id.* at pp. 9-10.

Following the accident, Tolino brought his vehicle to a stop and looked in his rear-view mirror, expecting the Mowad vehicle to stop. *Id.* at pp. 14-15. When he saw that the Mowad vehicle was not going to stop or turn around, he turned his vehicle around and drove in the direction of the Mowad vehicle. *Id.* He testified that he pursued the vehicle at approximately 50 to 60 miles per hour, but that he never got closer than a quarter of a mile before the Mowad vehicle was involved in the fatal single-car accident. *Id.* at pp. 16-18. He acknowledged that the speed limit in the area was 35 miles per hour. William Wagner Jr., who was at the scene of the accident, testified that, shortly after the accident, Tolino told him that he had been traveling in excess of 70 miles per hour. Pl.s' br. at exhibit F, dep. of William Wagner Jr. at p. 21.

Courtney Kiefer, who was in the Mowad vehicle, testified that at the time of the sideswipe accident that Mowad was not driving at an excessive speed. Dep. of Courtney Kiefer at p. 50. Tolino acknowledges that at the time of the sideswipe the Mowad vehicle was not traveling fast. Dep. of Tolino at p. 15. She further testified that, prior to the sideswipe accident with Tolino, she did not notice that Mowad was swerving or driving erratically. Dep. of C. Kiefer at p. 46.

Ms. Kiefer testified that, upon seeing Tolino's vehicle turn around, Mowad's vehicle sped up. Dep. of Courtney Kiefer at pp. 53-54. Her testimony differs from Tolino concerning the distances between the vehicles. Specifically, she testified:

"Q. How do you know that he [Mowad] saw [Tolino's] car turn around?

"A. Well, he had a mirror. I'm sure he saw the lights right behind us. They were pretty bright, like right here." *Id.* at p. 54.

Later, she testified:

"Q. Why were you scared?

"A. Because we were going fast and I've never been in a situation like that where someone is behind us chasing us like that.

"Q. How do you know someone was chasing you?

"A. Well, they were right behind us and they kept following us.

"Q. What do you mean right behind you?

"A. I don't—well, we saw the lights behind us and they kept following us.

"Q. You don't know how far behind they were?

"A. They weren't that far behind.

"Q. Do you know if they were a quarter mile, half a mile?

"A. No, I don't know. . . .

"Q. Okay. But the headlights certainly weren't right behind you?

"A. Right behind me meaning like?

"Q. Right on your fender or within two, three car lengths.

"A. I think within two or three car lengths." *Id.* at pp. 68-69.

During his deposition, Tolino admitted that at the scene of the second and fatal accident, he told someone that he was "chasing" the Mowad vehicle prior to the crash, although he characterized that as a "figure of speech." Dep. of Tolino at p. 28.

Traci Wagner, who lives at the house directly in front of the scene of the fatal accident, is able to place Tolino's vehicle at the scene of the accident within 17 to 25 seconds after she heard the accident. Because of dust and debris, she is not able to give an opinion how long, if at all, it had been parked there before the 17- to 25-second time period. Dep. of Traci Wagner at p. 19, pl.s' br. at exhibit G. John Dietz was also at the scene of the accident. He testified that, while driving, he came upon Mowad's vehicle while it was overturned and its wheels were still spinning. He testified that he did not see either the Wagners or Tolino at the accident scene when he arrived. App. U, dep. of Dietz at pp. 20-24. See also, app. V, dep. of Deborah Black, pp. 13-16.

## Discussion

Simply stated, Tolino's first argument is that he is not the proximate cause of the accident. In response, Byrne argues that, under the particular facts in this case, proximate cause is an issue for the jury.

## Proximate Cause

We agree that under Pennsylvania law, the question of proximate cause is generally for the jury. However, in

cases where "the relevant facts are not in dispute and the remoteness of the causal connection between the defendant's negligence and the plaintiff's injury clearly appears, the question becomes one of law." *Liney v. Chestnut Motors Inc.*, 421 Pa. 26, 29, 218 A.2d 336, 338 (1966). Stated differently, "[o]nly if the facts are not in dispute and thus reasonable minds cannot differ can the question be removed from the consideration of the fact-finder, since then there is only a question of law to be decided." *Commonwealth, Dept. of General Services v. United States Mineral Products Co.*, 809 A.2d 1000, 1011 (Pa. Commw. 2002).

In order to find that an act is the proximate cause of an accident, there must be a nexus between the wrongful acts and the injury sustained of such a nature that it is socially and economically desirable to hold the wrongdoer liable. Under Pennsylvania law, as well as under the Restatement (Second) of Torts, a defendant's wrongful conduct must be a substantial factor in bringing about plaintiff's harm. *Gutteridge v. A.P. Green Services Inc.*, 804 A.2d 643 (Pa. Super. 2002); Restatement (Second) of Torts §431. A cause can be found to be substantial if it is significant or recognizable; it need not be quantified as considerable or large. *Jeter v. Owens-Corning Fiberglas Corp.*, 716 A.2d 633 (Pa. Super. 1998).

Section 433 of the Restatement (Second) of Torts sets forth a standard for determining whether negligent conduct is a substantial factor in producing the injury:

"The following considerations are in themselves or in combination with one another important in determining whether the actor's conduct is a substantial factor in bringing about harm to another:

"(a) the number of other factors which contribute in producing the harm and the extent of the effect which they have in producing it;

"(b) whether the actor's conduct has created a force or series of forces which are in continuous and active operation up to the time of the harm, or has created a situation harmless unless acted upon by other forces for which the actor is not responsible;

"(c) lapse of time." quoted in *Taylor v. Jackson,* 164 Pa. Commw. 482, 491, 643 A.2d 771, 775 (1994). See also, Restatement (Second) of Torts §433 cmt. a ("[These factors] are important to a court in determining whether upon the evidence there is room for a reasonable difference of opinion as to whether the defendant's negligence is a substantial factor in bringing about the other's harm.").

In explaining proximate cause, Pennsylvania's Suggested Standard Civil Jury Instructions have recently replaced the term "substantial cause" with the term "factual cause." In relevant part, it advises a jury that, to be a factual cause, the negligent conduct must be "an actual, real factor, not a negligible, imaginary, or fanciful factor, or a factor having no connection or only an insignificant connection with the injury." Pennsylvania Suggested Standard Civil Jury Instruction, second edition, 3.25.

Given all these considerations, we cannot, as a matter of law, hold that Tolino's conduct was not a proximate cause of the accident. We find that reasonable minds may differ on the effect of Tolino's conduct on the accident, and that a sufficient nexus between Tolino's conduct and the injury sustained exists. Therefore this issue is properly resolved by a jury. In so holding, we are bound by

the summary judgment standard, and accept as true that Tolino chased the Mowad vehicle at speeds in excess of 70 miles per hour, twice the legal speed limit, while following the vehicle at an unsafe distance.

We make this finding although we find that the police chase cases cited by plaintiffs are factually distinguishable and ultimately unavailing to the court in resolving this issue. *Aiken v. Borough of Blawnox,* 747 A.2d 1282 (Pa. Commw. 2000); *Agresta v. Gillespie,* 158 Pa. Commw. 230, 631 A.2d 772 (1993). Police and other emergency vehicle pursuit cases involve their own unique circumstances, and their applicability is best suited to other police pursuit cases. We do note, however, that, similar to the case at bar, in at least one police chase case, the appellate court opined that liability is not excused as a matter of law "on the sole basis that the pursued vehicle, and not the police pursuer, was physically involved in the collision." *Kuzmics v. Santiago,* 256 Pa. Super. 35, 40, 389 A.2d 587, 590 (1978). See also, *Commonwealth v. Levin,* 184 Pa. Super. 436, 440, 135 A.2d 764, 766 (1957). The case most factually similar to this case that our research has uncovered is a common pleas case from Lancaster County. *Brim v. Wertz,* 35 D.&C.4th 277 (1996). In *Brim,* two individuals had been racing each other arising out of an episode of apparent road rage, whereupon, while attempting an illegal pass, one of the drivers struck a third oncoming car in a head-on collision. The driver of the third vehicle, the plaintiff, sought to recover damages from both vehicles involved in the race. In holding that the plaintiff could not recover from both drivers, the court found that, by the time of the accident, the driver not involved in the collision had with-

drawn from the race and was not speeding at the time of the accident, and thus could not be found to be the proximate cause of the accident. *Id.* at 286. The court noted that if the accident had occurred during the race, "our analysis would be hard-pressed to find a similarly complete severance of causal connection." *Id.* at 286 n.6.

In the case before this court, there are several similarities and distinguishing factors from *Brim,* although we find it instructive. The most obvious distinguishing factor is that the accident in this case involves only two vehicles, both of which were traveling at unsafe speeds. The fact that the collision in this case involves a single car being driven by a legally intoxicated individual may affect that driver's contributory negligence, but, as noted above, a driver can be legally negligent without being involved in the accident itself. *Kuzmics,* 256 Pa. Super. at 41, 389 A.2d at 590. Unlike *Brim,* Tolino had not removed himself from the high speed chase at the time of the accident. The evidence viewed in the required light shows that, at the time of the accident, Tolino was involved in a high speed chase of a vehicle, following it at an unsafe distance. Reasonable minds may differ on what effect Tolino's conduct had on the accident, and whether it was a substantial factor in bringing about the accident. Therefore we cannot absolve him from liability as a matter of law.

With specific reference to the factors set forth in section 433 of the Restatement, we acknowledge that there are other factors which contributed to the harm—specifically, the furnishing of alcohol to minors and Mowad's decision to drive while intoxicated. The proximity of Tolino's negligent conduct and the accident, however,

convinces the court that he is a part of the causal chain of events that leads to the accident. Restatement (Second) of Torts §433(c). We do not find fault with Tolino's initial decision to turn his vehicle around after the sideswipe accident. We do, however, find fault with his decision to pursue the Mowad vehicle at unsafe speeds and at an unsafe distance when it became apparent that Mowad intended to flee the scene. This behavior created an unreasonable risk of danger to third parties, and it would not be unreasonable for a jury to conclude that this conduct was a substantial factor in bringing about the injuries to the plaintiff. Therefore, on these facts, a jury must determine whether Tolino's conduct proximately caused the injuries in this case.

## Punitive Damages

Pennsylvania law has embraced section 908(2) of the Restatement (Second) of Torts regarding punitive damages: "[p]unitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others." See *Feld v. Merriam,* 506 Pa. 383, 395, 485 A.2d 742, 747 (1984). In defining the "reckless indifference to the rights of others" standard for punitive damages, our courts have referred to section 500 of the Restatement of Torts. *Focht v. Rabada,* 217 Pa. Super. 35, 268 A.2d 157 (1970). In the comment to that section, it delineates reckless conduct into two separate types. Restatement (Second) of Torts §500 cmt. a. We direct our attention to the first type of reckless conduct, because our Supreme Court has held that of the two types described, only the first type is sufficient to create a jury question on punitive damages. *SHV Coal Inc. v. Continental Grain Co.,* 526 Pa. 489,

495, 587 A.2d 702, 704 (1991). It states that reckless conduct may only be found where the "actor knows, or has reason to know, . . . of facts which create a high degree of risk of physical harm to another, and deliberately proceeds to act, or to fail to act, in conscious disregard of, or indifference to, that risk[.]" *Id.* at 494, 587 A.2d at 704. Thus, in sum, our Supreme Court concludes, "punitive damages are awarded only for outrageous conduct, that is, for acts done with a bad motive or with a *reckless indifference* to the interests of others." *Id.* at 495, 587 A.2d at 705. (emphasis in original) We hold that the plaintiffs have adduced sufficient evidence of Tolino's conduct in order to create a jury question on the issue of punitive damages. The determination of whether a person's actions arise to outrageous conduct lies within the sound discretion of the fact-finder. See *id.* As set forth above, the evidence viewed in the required light would permit a jury to conclude that by Tolino's own admission, he chased the Mowad vehicle at speeds at least double the posted speed limit, while following the Mowad vehicle at an unsafe distance. *Lewis v. Miller,* 374 Pa. Super. 515, 521, 543 A.2d 590, 592 (1988) (holding conduct was wanton as a matter of law for traveling 75 m.p.h. in a 45 m.p.h. zone while racing on a windy road). His conscious decision to chase the Mowad vehicle can properly be considered by a jury to demonstrate wanton and outrageous conduct and/or reckless indifference to others.

## Conscious Pain and Suffering

The final issue raised by Tolino is whether the plaintiffs' medical expert report raises an issue of fact with regard to the damages sought for conscious pain and suf-

fering under the survival action. The long-standing rule in Pennsylvania is that where an individual is killed instantaneously, the estate cannot recover for pain and suffering. *Fisher v. Dye,* 386 Pa. 141, 125 A.2d 472 (1956). Likewise, an individual cannot recover for the fright one experiences before an accident occurs. *Nye v. PennDOT,* 331 Pa. Super. 209, 480 A.2d 318 (1984). We therefore look to plaintiffs' expert report with a view to determining whether it would support testimony concerning conscious pain and suffering.

The expert report details the injuries, which upon her ejection from the vehicle would have instantaneously caused her death. It concludes, however, that she would have suffered pain while "she was being jostled and thrown around while within the vehicle before she was ejected." Pl.s' mem. of law in opp. of mot. for summ. j. at exhibit I. The report does not attempt to qualify these injuries. However, it is clear that these injuries are distinct from pre-impact fright because it notes that the plaintiff would "also" feel terror at the notion of her impending death. We therefore deny summary judgment on this basis. The conscious pain and suffering in this case may have occurred for seconds or even fractions of a second. However, the plaintiff is still entitled to recover for it.

## ORDER

And now, February 4, 2005, defendant Flory Tolino's motion for summary judgment is denied.