574 A.2d 1184

**Curtis C. CARSON, III, Appellant,**

**v.**

**CITY OF PHILADELPHIA, Morton B. Solomon, James McHugh, William Sweeney, James Stasnek, and Raymond L. Bruce, Appellees.**

Commonwealth Court of Pennsylvania.

Argued March 5, 1990.

Decided May 8, 1990.

76

George F. Schoener, Jr., M. Mark Mendel, Ltd., Philadelphia, for appellant.

Miriam B. Brenaman, with her, John B. Day, Philadelphia, for appellees.

Before CRAIG and COLINS, JJ., and SILVESTRI, Senior Judge.

CRAIG, Judge.

Curtis C. Carson III appeals a decision of the Court of Common Pleas of Philadelphia County that granted a motion for summary judgment against him and in favor of the city-related defendants, the City of Philadelphia, Morton B. Solomon, James McHugh, William Sweeney and Joseph Stasnek, in his tort action.

Carson first had initiated a lawsuit against the defendants in federal district court, based on claims of federal civil rights violations and pendent state tort claims.

The defendants moved for summary judgment in the district court on Carson's federal cause of action and certain

issues involved in his state claims. The district court granted the motion for summary judgment on the federal claims, refused to address the pendent state issues, relinquished jurisdiction and, on praecipe, transferred the state claims to the common pleas court.

■ Carson argues that material issues of fact remain with regard to his state claims, which include: malicious prosecution, negligence, recklessness, and infliction of emotional distress.[1]

■ Initially, we note that the city here asserts the defense of res judicata, alleging that the federal court's disposition of certain issues should preclude relitigation at the trial court level and here. However, the city did not raise that issue before the trial court; therefore, the city has waived that issue.

### Facts

The facts, as indicated in Carson's complaint, testimony given at his criminal trial, and depositions given in preparation for Carson's civil lawsuit, are as follows.

On or about April 9, 1983, Curtis Carson and his roommate, Raymond Bruce, engaged in a dispute in their apartment. Carson alleges that Bruce began acting in an irrational and uncontrollable manner, ran to the bedroom window, and jumped or fell out of the window.

Carson joined Bruce outside the apartment building. According to the testimony of witnesses at Carson's criminal trial, when Carson appeared on the scene, he was holding a knife, and his hands and clothing were bloody.

---

1. We note that although Carson filed his complaint in federal court, after the federal court transferred the pendent claims to the court of common pleas, neither the court nor the plaintiff took action to amend the complaint to conform to Pennsylvania Rules of Civil Procedure. Thus, Carson's complaint does not delineate each of his state claims. Carson's complaint appears to allege causes of action in addition to those he addresses in his brief. However, because he has not briefed those causes, this court will not address them. Also, we note that the city failed to address Carson's malicious prosecution claim in its brief.

Ultimately, Carson returned to the apartment. Sometime later, police approached the apartment. Carson's complaint alleges that, while he was in the apartment, the police threatened his physical safety. However, in a deposition Carson gave in the course of proceeding with his lawsuit, he described the police department's actions as follows:

Q. Through your conversations and so on, did you hear anything that would indicate that anyone was trying to break the door in?

A. Yes.

Q. What did you hear?

A. Later on, sometime later, I heard—my door is right at the steps coming up from the first floor, and I heard like an Army coming up the steps, hard pounding of the steps, and someone saying, "It's stakeout." That's what I heard. Then someone pounded on the door and said, "Mother Fucker, open this door or we're going to blow it off." And at that point I just snapped and I ran, and I ended up out the window. I thought they were going to kill me. I thought they were going to break the door in and shoot me.

Transcript of deposition, September 15, 1986, pp. 100–1. Carson claims the alleged threat caused him to jump out of the same window from which Bruce had jumped earlier. Carson was injured in the jump.

The police arrested Carson, charging him with aggravated assault, simple assault, and terroristic threats. The district attorney's office proceeded to prosecute Carson. However, Carson was acquitted of all charges.

In addition to the physical and emotional injuries he alleges to have sustained, Carson claims that the defendants entered into a conspiracy to arrest and prosecute Carson on the criminal charges arising from the incident at his apartment.

### Negligence

■ Although the trial court did not address Carson's negligence claim, this court may affirm the trial court's

dismissal of that claim if, as a matter of law, Carson's complaint and testimony in the record fail to establish a cause of action sounding in negligence.

Carson cites *Morena v. South Hills Health System*, 501 Pa. 634, 642, 462 A.2d 680, 684, n. 5 (1983), which sets out the requirements of a negligence action:

(1) a duty or obligation recognized by the law, requiring the actor to conform to a certain standard of conduct; (2) a failure to conform to the standard required; (3) a causal connection between the conduct and the resulting injury; and (4) actual loss or damage resulting to the interests of another.

■ The Pennsylvania Supreme Court has defined the test of negligence as "whether the wrongdoer could have anticipated and foreseen the likelihood of harm to the injured person, resulting from his act." *Dahlstrom v. Shrum*, 368 Pa. 423, 425, 84 A.2d 289, 290 (1951). In that case, the Supreme Court upheld a nonsuit, taking the case from the jury because of the absence of foreseeability. As a matter of law, no duty arises under the law of negligence unless the likelihood of harm to another is foreseeable.

■ This court concludes, as a matter of law, under the facts Carson pleaded in his complaint, that the city defendants did not owe a duty of care to Carson, because the defendants could not foresee that, as a result of their alleged threat to break down the door to Carson's apartment, Carson would jump out his window and sustain injuries.

### Intentional or Negligent Infliction of Emotional Distress

*Stoddard v. Davidson*, 355 Pa.Superior Ct. 262, 513 A.2d 419 (1986) indicates that there are two ways in which a party may make a claim for damages for infliction of emotional distress:

One method is showing that the defendant, through his negligence, was the proximate cause of the emotional injury to the plaintiff. The second method is by showing that the defendant acted intentionally or recklessly to

cause the emotional injury to the plaintiff. *Stoddard,* 355 Pa.Superior Ct. at 265, 513 A.2d at 421.

Under section 46 of the Restatement of Torts 2d, a person who by extreme and outrageous conduct intentionally or recklessly causes severe or emotional distress to another is subject to liability for such emotional distress. The Restatement defines outrageous conduct as conduct or statements which go beyond all bounds of decency and are regarded as utterly intolerable in a civilized community.

■ In this court's view, the alleged statements and conduct of the police department were not so extreme or outrageous as to subject the city-related defendants to liability for intentional infliction of emotional distress. According to the facts alleged, testimony from Carson's criminal trial, and depositions from Carson's lawsuit, the police responded to an admittedly emotionally disturbed person. Those sources also reveal that the police reasonably could presume that Carson might be dangerous to others, as well as to himself. Furthermore, objectively, the police statement, which allegedly prompted Carson to jump, does not suggest that Carson was in any imminent danger *himself* of being assaulted by the police.

■ The *Stoddard* decision succinctly summarizes the methods by which a plaintiff may succeed with a claim of negligent infliction of emotional distress:

[A] cause of action for negligent infliction of emotional distress initially required a physical impact. That element was declared not essential in *Niederman* [*v. Brodsky,* 436 Pa. 401, 261 A.2d 84 (1970)] if the plaintiff was in the zone of danger. Finally, the plaintiffs presence within that zone was held to be not necessary subject to the presence of *Sinn's* [*Sinn v. Burd,* 486 Pa. 146, 404 A.2d 672 (1979)] three elements. *Niederman* and *Sinn* are, thus, two alternative methods to establish a case for negligent infliction in the absence of physical impact.

355 Pa.Superior Ct. at 266, 513 A.2d at 421–2.

In this case, no physical impact is involved because Carson only alleges that the police threatened to break down

the door; the only physical impact occurred when Carson jumped out the window. Research has not disclosed any case law which suggests that a party may maintain an action for negligent infliction of emotional distress where a party sustains a physical impact because of his own subjective reaction to conduct which allegedly causes him to react in a way that produces a physical injury.

*Sinn v. Burd*, 486 Pa. 146, 404 A.2d 672 (1979), to which the *Stoddard* court referred, is not applicable in Carson's case because that decision provides a remedy for plaintiffs outside the zone of danger when the plaintiff observes an injury involving (1) a close family member, (2) is located near the scene of the accident, and (3) the plaintiff's shock is a result of the direct emotional impact from observing the accident. Carson's complaint does not involve his observation of an injury involving a close family member.

The only other possible theory upon which Carson could rely applies when a plaintiff, such as Carson, alleges facts, which if proved, establish that negligent force was *aimed at the plaintiff* and put him in danger of physical impact, and that he actually did fear the force. *Niederman v. Brodsky*, 436 Pa. 401, 261 A.2d 84 (1970).

In this case, Carson's complaint, viewed in light of his own deposition testimony, does not support his allegation that the department "aimed" force at him. Although his complaint alleges that the department threatened his physical safety, his testimony reveals that the police only *threatened* to *break down the door*. Although Carson's deposition indicates that he felt his life was in danger, his subjective reaction is insufficient to establish an action for negligent infliction of emotional distress.

## Malicious Prosecution

In an action for malicious prosecution, a plaintiff must establish that the defendant initiated the criminal proceedings against him without probable cause and primarily for a purpose other than to bring an offender to justice. Also, the prosecution must have terminated in favor of the

plaintiff. *Bruch v. Clark*, 352 Pa.Superior Ct. 225, 507 A.2d 854 (1986).

■ Probable cause in a malicious prosecution claim does not require proof beyond a reasonable doubt, but is proof as to whether facts and circumstances convince an individual as a reasonable, honest and intelligent human being, that a suspect is guilty of a criminal offense. *Bruch.*

In *Bruch,* the Superior Court indicated that evidence which indicated that the defendants had made promises to the plaintiff, in an attempt to induce her cooperation in an investigation of welfare fraud, went to the issue of malice, and not to the issue of probable cause.

■ Thus, even where a malicious motive for initiating a criminal prosecution exists, that animus is immaterial in the context of a malicious prosecution claim if probable cause exists. *Bruch.*

■ Viewing Carson's complaint, and the depositions and testimony of witnesses and participants in the criminal proceeding against Carson and Carson's civil action, in the light most favorable to Carson, reveals the following facts pertinent to his malicious prosecution claim.

Following the events recited above, Chief Philadelphia County Detective Gilbert Branche and Detective Stasnek interviewed Raymond Bruce at the hospital. At that time, Bruce indicated that he could not say whether Carson had either pushed or thrown him through the window. Questions posed to Bruce by Detective Stasnek at that interview indicated to Branche that Stasnek had questioned Bruce earlier. From those questions, and Bruce's responses, Branche believed that Bruce had told Stasnek, at the earlier interview, that Carson had tried to kill Bruce by throwing him out the window, and that Bruce intended to "get back" at Carson. (Transcript of Deposition, p. 43.) Branche also stated in his deposition that he assumed no charges would be filed against Carson because Bruce's responses at the later interview indicated that he had no recollection of the cause of his fall. (Transcript of Deposition, p. 58.)

According to the attending physician's report, Bruce told the physician in the emergency room that he had jumped from his apartment window. (RR p. 446). However, three days after Branche and Stasnek interviewed Carson, when the police applied for a warrant for Carson's arrest, they did not include that information in their application.

At the preliminary hearing, Bruce testified that he either tripped or fell out of the window. However, at the criminal trial Bruce testified that

"I fell coming into my room. When I fell in my room, I hit the floor and I hit my head on the dresser table that's in my room. It's alongside of the wall to the right. I was on the floor for I don't know what period of time. And the next thing I know, I was going out the window. I did not jump out of the window, nor did I just accidentally stumble out of the window." (Transcript of trial testimony, p. 101)

Thus, although Bruce did not testify that he remembered that Carson pushed him, the implication of his statement is that he believed Carson did push him out of the window.

According to Carson's deposition, Bruce admitted to Carson that the police and District Attorney's office had "pressured" him to change his story. (Transcript of Deposition, p. 129.)

Carson argues that the question of whether probable cause exists, for the purpose of a malicious prosecution claim, is one for a jury when there is a conflict in the testimony regarding the facts. *Byers v. Ward*, 368 Pa. 416, 84 A.2d 307 (1951). Thus, he asserts that because Bruce changed his story regarding the cause of his fall, there is a conflict in the testimony which requires resolution by a jury, rather than the trial court, on the issue of probable cause.

However, even if Carson did not push Bruce out of the window, Carson has not established that the actual events before and after Bruce's fall could not constitute probable cause for the criminal charges against him.

Even if we accept that Bruce changed his story, and, even assuming the facts indicated in Carson's testimony and deposition, relating to the exchange between Carson and Bruce which led up to Bruce's "fall" from his second story window, an honest and reasonable person could conclude that Carson's behavior *precipitated* Bruce's fall, and thus, that probable cause existed which justified the city's pursuit of its criminal charges against Carson. The testimony of Carson, Bruce (even if regarded as equivocal), and other witnesses, when taken as a whole, does not establish a lack of probable cause.

The trial court's decision granting summary judgment is affirmed.

## ORDER

Now, May 8, 1990, the order of the Court of Common Pleas of Philadelphia County, dated August 28, 1989, at No. 5524 May Term 1987, is affirmed.