IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Moon Township, Chief Greg         :
Seamon, and Sgt. Robert Phillis,  :
          Appellants       :
                        :
        v.                        :  No. 234 C.D. 2022
                        :
Amanda Papa                       :  Submitted:  November 4, 2022

OPINION NOT REPORTED

MEMORANDUM OPINION
PER CURIAM                                          FILED:  March 3, 2023

Moon Township, Chief Greg Seamon, and Sergeant Robert Phillis (collectively, Township) appeal from a December 30, 2021 order of the Court of Common Pleas of Allegheny County (Trial Court) denying the Township's Motion for Summary Judgment. Upon review, we reverse and remand to the Trial Court for the entry of judgment in favor of the Township.

## I. Background

On April 22, 2018, Amanda Papa was attending an Earth Day celebration in a local park. *See Commonwealth v. Amanda Lynn Wasserman, a.k.a. Papa* (C.C.P. Allegheny Cnty., No. CP-02-CR-0008419-2018, filed July 20, 2020) (Criminal Trial Opinion), at 9. Ms. Papa objected to the presence of representatives of a petroleum company that had sponsored the event, and loudly demanded that one representative explain their presence. *Id.* at 12. Dissatisfied with the explanation, Ms. Papa became enraged and accused the representatives of handing out propaganda to children. *Id.* Ms. Papa then grabbed a stack of backpacks that were being offered to attendees and attempted to run out of the booth with them. *Id.* A representative grabbed the backpacks. A struggle ensued and Ms. Papa hit the representative in the chest. *Id.* Township police officers were called to the scene. When the responding officers

instructed Ms. Papa to leave the park, she physically attacked them. *Id.* at 13. The officers placed Ms. Papa under arrest and led her toward a patrol car. Ms. Papa continued to kick, scream, and swear. *Id.* at 13.

Ms. Papa was charged with resisting arrest, defiant trespass, disorderly conduct (unreasonable noise), two counts of harassment (subjecting others to physical contact), disorderly conduct (engaging in fighting), and aggravated assault against both officers. *Id.* at 3. On March 4, 2019, following a bench trial, Ms. Papa was acquitted of the aggravated assault charge, but convicted of the remaining charges.[1] At sentencing on March 27, 2019, Ms. Papa was sentenced to a term of probation with several conditions.[2] *Id.* Ms. Papa was specifically directed to not contact any of the victims or any of the involved parties, and to refrain from making any "offensive or derogatory social media posts" about any of the involved parties or entities. Criminal Trial Op. at 3. Almost immediately after conviction, Ms. Papa wrote a public Facebook post accusing an officer who testified at her trial of "lying under oath." Reproduced Record (R.R.) at 371a-438a. Police Chief Seamon notified Ms. Papa's probation officer and provided printouts of the posts in question. At a violation hearing on June 20, 2019, the trial judge ordered Ms. Papa to be placed on

---

[1] Ms. Papa appealed to the Superior Court, which affirmed the convictions. *See Commonwealth v. Amanda Lynn Papa* (Pa. Super., No. 1407 W.D.A. 2019, filed Nov. 12, 2021), *appeal denied*, 275 A.3d 487 (Pa. 2022).

[2] At the same trial, Ms. Papa was convicted of institutional vandalism and a further count of resisting arrest due to a series of incidents that occurred on May 30, 2018. Criminal Trial Op. at 3. The charges were consolidated for trial, conviction, and sentencing. *Id.* at 1. The May 30, 2018 events, and the convictions that followed, form the factual basis of a separate civil action and appeal to this Court. *See Borough of Coraopolis v. Papa* (Pa. Cmwlth., No. 233 C.D. 2022, filed March 3, 2023.

electronic monitoring and admonished her again to avoid making social media posts about her case or the parties. *Id.* at 302a-03a.

On September 23, 2020, Ms. Papa filed a Complaint *pro se*[3] alleging that the Township and its employees were liable for malicious abuse of process, intentional infliction of emotional distress, deprivation of free speech rights under the United States and Pennsylvania Constitutions, false arrest, and malicious prosecution.[4] Original Record (O.R.), Item No. 8. On May 12, 2021, the Township filed Preliminary Objections in which it asserted governmental and official immunity from all of Ms. Papa's claims. Original Record (O.R.), Item No. 12. In a July 12, 2021 order, the Trial Court overruled the Preliminary Objections but instructed Ms. Papa to make further amendments within 45 days.[5] O.R., Item No. 14. On August 25, 2021, Ms. Papa submitted a Second Amended Complaint to the Trial Court. O.R., Item No. 17. Apart from the reference to federal constitutional rights, which was omitted, the Second Amended Complaint contained the same averments as the original complaint. As a proposed remedy, Ms. Papa requested an award of money damages in an unspecified amount, plus legal costs, in her favor. *Id.* ¶ 50.

---

[3] While examining Ms. Papa's claims, we are mindful of the rule that "allegations of a *pro se* complainant are held to a less stringent standard than that applied to pleadings filed by attorneys." *Rosario v. Beard*, 920 A.2d 931, 934 (Pa. Cmwlth. 2007) (quoting *Danysh v. Dep't of Corr.*, 845 A.2d 260, 262-63 (Pa. Cmwlth. 2004), *aff'd*, 881 A.2d 1263 (Pa. 2005)). Where a *pro se* complainant's allegations are adequately set forth, they will not be dismissed just because they are not artfully drafted. *Hill v. Thorne*, 635 A.2d 186, 189 (Pa. Super. 1993).

[4] Since the complaint referenced violations of federal constitutional rights, the Township removed the case to the United States District Court for the Western District of Pennsylvania. *See Papa v. Moon Twp.* (W.D. Pa., 20-CV-01528-CCW, filed Apr. 30, 2021), slip op. at 1. Ms. Papa submitted an Amended Complaint omitting references to the federal constitution. *Id.* Accordingly, the district court remanded the case to state court in a May 6, 2021 order. O.R., Item No. 11.

[5] It is not clear from the record what amendments Ms. Papa was directed to make.

In support of her claims, Ms. Papa submitted five exhibits. First was the handwritten witness statement of a Township employee, Amy Ottaviani who witnessed the April 22, 2018 incident. Ms. Ottaviani explained that Ms. Papa first drew her attention when Ms. Papa sat down on top of a table that had been set up for the event sponsor, and became "loud and very disruptive." R.R. at 37a. Ms. Ottaviani also stated that Moon Township police had "acted professionally." *Id.* at 37a-38a. Second was a document from the Allegheny County probation office regarding Ms. Papa's "continuing violation" of her probation terms. *Id.* at 39a. Third and fourth were Ms. Papa's own summary and analysis of her social media activity, in which she denied creating any posts that violated her probation. *Id.* at 40a-41a. Fifth was a letter from a health care provider describing Ms. Papa's "symptoms of anxiety and depression."[6] *Id.* at 43a.

On September 17, 2021, the Township filed an Answer and New Matter to the Second Amended Complaint, in which it maintained its immunity defense. O.R., Item No. 18. On October 1, 2021, the Township filed a Motion for Summary Judgment. O.R., Item No. 24. Therein, the Township again asserted that it was governmentally immune from Ms. Papa's claims under Sections 8541 and 8542 of the Judicial Code, commonly referred to as the Political Subdivision Tort Claims Act (Tort Claims Act), 42 Pa.C.S. §§ 8541-8542.[7] *Id.* ¶¶ 36-41. According to the

---

[6] The health care provider explained that Ms. Papa's "anxiety typically manifest[s] as intense anger and posturing as a way to protect herself when she feels she is under threat." R.R. at 43a. The provider then opined that Ms. Papa's suicidal ideations, "as well as interactions with police in the midst of crisis, further escalated her sense of immediate and intense peril." *Id.* The letter does not make any other reference to police or Ms. Papa's interactions with them.

[7] Section 8541 provides that, except as otherwise specified in the Tort Claims Act, "no local agency shall be liable for any damages on account of any injury to a person or property

**(Footnote continued on next page…)**

4

Township, Chief Seamon and Sergeant Phillis were protected by official immunity under Section 8545 of the Tort Claims Act.[8]  *Id.* ¶¶ 42-49.  The Township further argued that Ms. Papa's claims amounted to an improper collateral attack on her criminal conviction.  *Id.* ¶ 55.  Finally, the Township alleged that the Pennsylvania Constitution does not recognize a private right of action for alleged violations of constitutional rights.  *Id.* ¶¶ 65-66.  Opposing summary judgment, Ms. Papa argued that her probation file, which had been obtained by the Township through a subpoena on the probation office and recently shared with Ms. Papa, "may result in further evidence."[9]  O.R., Item No. 27, Response ¶ 21.

On December 30, 2021, the Trial Court issued an order denying the Township's-Motion for Summary Judgment, which consisted simply of a printout of the Township's proposed order granting summary judgment, with the text crossed out and the single word "denied" written in the margin.  O.R., Item No. 29.

The Township subsequently petitioned this Court for permission to appeal.  In a May 19, 2022 *per curiam* order, this Court granted its petition and directed the parties to submit briefs on three issues: whether the Township or its employees were immune from suit, whether Ms. Papa's suit constituted a collateral attack on her

---

caused by any act of the local agency or an employee thereof or any other person."  42 Pa.C.S. § 8541.  Section 8542 provides certain exceptions, all of which involve negligence claims that are not at issue in this case.  42 Pa.C.S. § 8542.

[8] Section 8545 provides that an "employee of a local agency is liable for civil damages on account of any injury to a person or property caused by acts of the employee which are within the scope of his office or duties only to the same extent as his employing local agency and subject to the limitations imposed by [the Tort Claims Act]."  42 Pa.C.S. § 8545.

[9] The Township obtained Ms. Papa's complete probation file through a subpoena on the probation office on September 21, 2021.  *See* R.R. at 370a.  The file includes, *inter alia*, printouts of the social media posts that were later determined to violate Ms. Papa's probation agreement.  *See generally id.* at 291a-302a.

conviction, and whether the Pennsylvania Constitution authorizes a private right of action for violations of its provisions.

## II. Issues

The Township argues that summary judgment was improperly denied because it and its employees are immune from suit as a matter of law, and because Ms. Papa's claims constitute an improper collateral attack on her criminal conviction.[10]

## III.  Discussion

Pennsylvania Rule of Civil Procedure 1035.2 provides:

> After the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law
>
> (1) whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or
> (2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury.

Pa.R.Civ.P. 1035.2.  A party seeking to avoid summary judgment must show by specific facts in the depositions, answers to interrogatories, admissions, or affidavits that there is a genuine issue for trial. *Moon v. Dauphin Cnty.*, 129 A.3d 16, 28 (Pa. Cmwlth. 2015).

Here, the Township moved for summary judgment on the basis that "Ms. Papa has had a full opportunity to conduct discovery," and that she has failed to "demonstrate a genuine issue of material fact for the jury's consideration."  O.R.,

---

[10] Our standard of review on appeal from the grant or denial of summary judgment is *de novo*, and our scope of review is plenary. *Clean Air Council v. Sunoco Pipeline L.P.*, 185 A.3d 478, 485 (Pa. Cmwlth. 2018).  Our review is limited to determining whether the trial court committed an error of law or abuse of discretion.  *Id.*

6

Item No. 24, Motion ¶ 15. In response, Ms. Papa argues that summary judgment on the malicious abuse of process, intentional infliction of emotional distress, and malicious prosecution claims would be inappropriate because discovery is ongoing, and that she should be allowed time to complete it. O.R., Item No. 27, Response to Motion for Summary Judgment ¶¶ 21, 24, 27. Ms. Papa argues that e-mail communications between Chief Seamon and her probation officer "may result in further evidence." *Id.* ¶ 21. The rest of Ms. Papa's Response to the Motion for Summary Judgment consists of restatements of the allegations set forth in the Second Amended Complaint. *See generally id.* ¶¶ 4-47.

Pursuant to Pa.R.A.P. 1925(a),[11] the Trial Court submitted a single sentence statement explaining its denial of summary judgment, which reads as follows: "When [Appellants] filed their [M]otion for [S]ummary [J]udgment, discovery was not closed and it was therefore not free and clear from all doubt that [Appellants] were entitled to summary judgment." The memorandum cites a single case, *Brown v. Tunkhannock Township*, 665 A.2d 1318 (Pa. Cmwlth. 1995), which is inapposite to the issues at hand.[12]

---

[11] Pa.R.A.P. 1925(a) provides that, upon the receipt of a notice of appeal, "the judge who entered the order giving rise to the notice of appeal, if the reasons for the order do not already appear of record, shall . . . file of record at least a brief opinion of the reasons for the order."

[12] The Trial Court's reliance on *Brown* is perplexing since *Brown* does not discuss the status of discovery or its impact on summary judgment. In *Brown*, the plaintiff sustained injuries at a softball game on township-owned land and brought an action in negligence against the township. 665 A.2d at 1319. After the close of pleadings and a single deposition, the township moved for summary judgment, asserting immunity pursuant to the Recreational Use of Land and Water Act (RULWA), Act of February 2, 1966, P.L. (1965) 1860, *as amended*, 68 P.S. §§ 477-1–477-8. 665 A.2d at 1319. The trial court granted the township's motion. *Id.* at 1319-20. This Court reversed, holding that the ballpark was "improved land" and therefore outside the scope of the RULWA. *Id.* at 1322.

It is important to note that the Trial Court did not address any of the three issues set forth in this Court's order granting the interlocutory appeal. Furthermore, the Trial Court offers an incomplete statement of when summary judgment is appropriate.

The close of discovery is not the only condition allowing summary judgment to be considered. Pursuant to Rule of Civil Procedure 1035.2(1), summary judgment is equally appropriate when "there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery." Pa.R.Civ.P. 1035.2(1). The Trial Court's statement fails to provide any insight or explanation as to why Rule 1035.2(1) is inapplicable in this instance. For the reasons set forth below, we have determined Ms. Papa's claims fail as a matter of law, and that further discovery would therefore serve no purpose.

## A. Governmental Immunity

Section 8541 of the Tort Claims Act provides the general rule of governmental immunity: "Except as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." 42 Pa.C.S. § 8541. 42 Pa.C.S. § 8542 provides eight exceptions to immunity, all of which involve acts of negligence.[13] The clear legislative intent to insulate local agencies and their employees from tort claims mandates that courts construe these exceptions narrowly. *Cornelius v. Roberts*, 71 A.3d 345, 350 (Pa. Cmwlth. 2013).

---

[13] The exceptions include: (i) the operation of motor vehicles; (ii) the care, custody, or control of personal property; (iii) the care, custody or control of real property; (iv) a dangerous condition of trees, traffic controls and street lighting; (v) a dangerous condition of steam, sewer, water, gas or electric systems; (vi) a dangerous condition of streets; (vii) a dangerous condition of sidewalks; and (viii) the care, custody or control of animals. 42 Pa.C.S. § 8542(b).

Instantly, Ms. Papa alleges that the Township is liable for acts allegedly committed by Chief Seamon and Sergeant Phillis as their employer.[14]  Since none of the acts alleged fall under any of Section 8542(b)'s exceptions to the general rule of governmental immunity, the Township is immune from all of Ms. Papa's claims.

### B. Official Immunity

Pursuant to Section 8545 of the Tort Claims Act: "An employee of a local agency is liable for civil damages on account of any injury to a person or property caused by acts of the employee which are within the scope of his office or duties only to the same extent as his employing local agency."  42 Pa.C.S. § 8545. However, Section 8550 provides that immunity is waived if an injury was caused by an act that is judicially determined to have "constituted a crime, actual fraud, actual malice or willful misconduct."  42 Pa.C.S. § 8550.  Courts have consistently held that "willful misconduct" is synonymous with "intentional tort"; that is, the actor "desired to bring about the result that followed, or at least that he was aware that it was substantially certain to ensue."  *Balletta v. Spadoni*, 47 A.3d 183, 196 (Pa. Cmwlth. 2012).

Instantly, Ms. Papa alleges that Chief Seamon and Sergeant Phillis are personally liable for malicious abuse of process, intentional infliction of emotional distress, deprivation of free speech rights, false arrest, and malicious prosecution. Those claims may only overcome official immunity if it is judicially determined that the officers' actions constituted willful misconduct; that is, intentional torts.  For the

---

[14] In response to Moon Township's assertion of immunity, Ms. Papa argues that under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), local governments "may be sued in certain limited circumstances."  O.R., Item No. 20, Response ¶ 13.  While that is true, *Monell* concerned civil actions for loss of federal constitutional rights pursuant to 42 U.S.C. § 1983.  Ms. Papa is no longer pursuing any federal claims, which is why this case was remanded to state court.

following reasons, we conclude that the averments in the Second Amended Complaint fail as a matter of law and fact to support any such determination.

### 1. Malicious Abuse of Process

According to Ms. Papa, Chief Seamon "initiated legal process against [her] by alleging [that she] violated conditions of probation by posting various news articles unrelated to the case to [Ms. Papa's] Facebook page." O.R., Item No. 17, Second Amended Complaint ¶ 25. Ms. Papa explained that, by his own admission, Chief Seamon had assigned "multiple people" to monitor her social media accounts during her probation. *Id.* ¶ 27. Ms. Papa asserts that these actions establish the claim of malicious abuse of process. *Id.* ¶ 28.

In order to prove a cause of action for malicious abuse of process, "the rule is well established that one of the necessary prerequisites . . . is that the previous prosecution terminated favorably to the plaintiff." *Smoker v. Ohl*, 6 A.2d 810, 811 (Pa. 1939). Instantly, Chief Seamon's reporting of Ms. Papa's social media activity led to a determination that she had indeed violated her probation. *See* R.R. at 302a-03a. As a consequence, no reasonable inference can be made that Chief Seamon engaged in the malicious abuse of process.

### 2. Intentional Infliction of Emotional Distress

Ms. Papa next asserts that as a result of Chief Seamon's reporting of her social media activity she suffered severe distress and was admitted to therapy at the Center for Victims partly as a result of his activity. O.R., Item No. 17, Second Amended Complaint ¶ 32. According to Ms. Papa these actions constituted intentional infliction of emotional distress. Even if true, this allegation is legally insufficient to support such a claim.

10

A person is subject to liability for intentional infliction of emotional distress if, by extreme and outrageous conduct, she/he intentionally or recklessly causes severe emotional distress to another. *Carson v. City of Phila.*, 574 A.2d 1184, 1187 (Pa. Cmwlth. 1990). Conduct or statements are "outrageous" if they "go beyond all bounds of decency and are regarded as utterly intolerable in a civilized community." *Id.* Before the question reaches a jury, it is for the court to determine whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery. *Swisher v. Pitz*, 868 A.2d 1228, 1231 (Pa. Super. 2005).

Instantly, Chief Seamon reported Ms. Papa's social media activity, which was a clear and direct violation of the terms of her probation. Chief Seamon had legitimate and compelling reasons to report her activities, and his actions were therefore entirely consistent with his duties as a law enforcement officer. No reasonable inference can be made that the performance of his duties constitutes extreme or outrageous conduct.

### 3. Deprivation of Free Speech Rights

Ms. Papa further seeks declaratory or injunctive relief for alleged violations of her right to free speech under the Pennsylvania Constitution.[15, 16] Ms. Papa alleges that her free speech right was violated when Sergeant Phillis confronted her "primarily due to [her] speech" regarding the petroleum company sponsoring the Earth Day event. O.R., Item No. 17, Second Amended Complaint ¶ 35. This is inaccurate. As indicated by the uncontradicted facts, Ms. Papa was confronted by Township officers because they had probable cause to believe that she was committing several criminal offenses. Police had no duty to let Ms. Papa finish her speech while she was engaged in criminal activity that endangered the safety of others. Consequently, the facts cannot support a reasonable inference that Ms. Papa's right to free speech was violated.

### 4. False Arrest

Ms. Papa next alleges that Sergeant Phillis is liable for false arrest because he lacked probable cause for arresting her on April 22, 2018. *Id.* ¶ 41. The necessary elements of a cause of action for false arrest are: (1) the detention of another person, and (2) the unlawfulness of such detention. *Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994). An arrest that is based upon probable cause is legally justified,

---

[15] The right to free speech is guaranteed by article I, sections 7 and 20 of the Pennsylvania Constitution. Section 7 provides, *inter alia*, that "every citizen may freely speak, write and print on any subject, being responsible for the abuse of that liberty." Section 20 provides that "the citizens have a right in a peaceable manner to assemble together for their common good, and to apply to those invested with the powers of government." PA. CONST. art. I, §§ 7, 20.

[16] The Township argues that Ms. Papa's claim fails because "the Pennsylvania Constitution does not provide a private right of action for alleged deprivation of free speech." Township's Br. at 26. However, private persons may bring actions seeking declaratory or injunctive relief when alleging violations of Pennsylvania constitutional rights, which is what Ms. Papa seeks here.

regardless of whether the individual arrested was eventually found guilty or not. *Id.* A guilty plea or conviction conclusively establishes probable cause, precluding a cause of action for false arrest. *McGriff v. Vidovich*, 699 A.2d 797, 800 (Pa. Cmwlth. 1997).

There was clearly probable cause to arrest Ms. Papa and she was ultimately convicted of numerous offenses. Furthermore, these convictions were upheld on appeal. Consequently, no reasonable inference can be made that Sergeant Phillis is liable for false arrest.

### 5. Malicious Prosecution

Ms. Papa next asserts that Sergeant Phillis is liable for malicious prosecution because he "did not have probable cause to initiate arrest or legal action." O.R., Item No. 17, Second Amended Complaint ¶ 46. A cause of action for malicious prosecution generally requires proof that the defendant (1) instituted criminal proceedings against the plaintiff, (2) without probable cause and (3) with malice, and (4) that the proceedings terminated in favor of the plaintiff. *Tomaskevitch v. Specialty Recs. Corp.*, 717 A.2d 30, 33 (Pa. Cmwlth. 1998). A showing of probable cause is an absolute defense to a charge of malicious prosecution. *Id.*

Once again, Sergeant Phillis indeed had probable cause to arrest Ms. Papa. No reasonable inference can be made that he is liable for malicious prosecution.

For the foregoing reasons, all of Ms. Papa's claims fail as a matter of law. Consequently, there is nothing in the record that would justify a judicial determination that Chief Seamon or Sergeant Phillis engaged in willful misconduct. Pursuant to Section 8545 of the Tort Claims Act, they are officially immune from those claims.

## C. Collateral Estoppel

Finally, Township argues that Ms. Papa's claims constitute an improper collateral attack on her criminal conviction. As authority for this assertion, Township cites *Weaver v. Franklin County*, 918 A.2d 194, 196 (Pa. Cmwlth. 2007). In that case, a prison inmate sued a county government for conspiracy, negligence, intentional infliction of emotional distress, and libel following his conviction and imprisonment for sexual assault. In rejecting his claims, this Court concluded that the plaintiff's "inability to aver that the underlying conviction was invalidated" was an absolute bar to recovery. *Id.* at 203. The principle underlying that conclusion, commonly referred to as collateral estoppel, is that a party may not relitigate an issue that has already been resolved in another proceeding. *See Shaffer v. Smith*, 673 A.2d 872, 874 (Pa. 1996) (noting "that a criminal conviction collaterally estops a defendant from denying his acts in a subsequent civil trial").

Since it has already been demonstrated that Ms. Papa's claims fail as a matter of law, it is not necessary to engage in a separate collateral estoppel analysis of those claims. However, for the sake of thoroughness, we note that underlying every one of Ms. Papa's claims is an effort to negate the legality and propriety of her arrest and conviction, and the later determination that she violated the terms of her probation. Even if we were so inclined, this Court is powerless to undo the outcome of valid criminal proceedings. The purpose of civil actions such as the one brought by Ms. Papa is not to provide second or third opportunities to relitigate criminal convictions after the proper avenues of appeal have been exhausted.

## IV. Conclusion

The Township and its employees are governmentally and officially immune from suit pursuant to the Tort Claims Act. Ms. Papa's claims fail for the additional

14

reason that they constitute a collateral attack on the outcome of valid criminal proceedings. Even if we accept Ms. Papa's allegations as true, these allegations clearly fail as a matter of law. Thus, any further discovery would only delay the inevitable dismissal of this case. Accordingly, we reverse the Trial Court's order and remand for entry of judgment in favor of the Township.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Moon Township, Chief Greg      :
Seamon, and Sgt. Robert Phillis,      :
           Appellants      :
                            :
         v.            :   No. 234 C.D. 2022
                            :
Amanda Papa              :

**PER CURIAM**

# O R D E R

AND NOW, this 3rd day of March, 2023, the order of the Court of Common Pleas of Allegheny County (Trial Court) in the above-captioned matter, dated December 30, 2021, is hereby REVERSED. The case is remanded to the Trial Court for the entry of judgment in favor of Appellants.

Jurisdiction relinquished.