IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Borough of Coraopolis,                          :
Officer Robert Litterini                        :
and Officer Nicholas DeRusso,                   :
                      Appellants                 :
                                                :
            v.                                   :  No. 233 C.D. 2022
                                                :
Amanda Papa                                     :  Submitted:  November 4, 2022

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
PER CURIAM                                          FILED:  March 3, 2023

The Borough of Coraopolis, Officer Robert Litterini, and Officer Nicholas DeRusso (collectively, the Borough) appeal from a December 30, 2021 order of the Court of Common Pleas of Allegheny County (Trial Court) denying the Borough's Motion for Summary Judgment.  Upon review, we reverse and remand to the Trial Court for the entry of judgment in favor of the Borough.

## I. Background

On the evening of May 30, 2018, Coraopolis Police Officers Litterini and DeRusso responded to a domestic violence call at the residence of Amanda Papa and her husband, Garrett Wasserman.  *See Commonwealth v. Amanda Lynn Wasserman, a.k.a. Papa* (C.C.P. Allegheny Cnty., No. CP-02-CR-0008418-2018, filed July 20, 2020) (Criminal Trial Opinion), at 9.  The call had been placed by Ms. Papa's father, who was concerned after finding his daughter intoxicated and agitated following a fight with her husband.  *Id.*  After the officers arrived, Mr. Wasserman, visibly injured, granted the officers access to the home.  *Id.* at 9-10.  Inside, the officers observed a broken television, broken computers, upturned houseplants and lamps,

and shattered glass strewn across the floors. *Id.* at 10. Ms. Papa emerged from an upstairs bedroom door, announced that she did not wish to see her husband, and returned to the bedroom to lock herself inside it. *Id.* Due to the information received from Ms. Papa's father and the condition of her home and her husband, the officers forced the bedroom door open. *Id.* They informed Ms. Papa that she was under arrest for the assault of her husband. *Id.* When the officers attempted to handcuff her, Ms. Papa attempted to fight them off. *Id.*

Upon her arrest, Ms. Papa was taken to a holding cell at the police station. *Id.* Immediately after the officers left her alone, Ms. Papa attempted to flood the cell by stuffing a blanket into a toilet and repeatedly flushing it. *Id.* at 10-11. The officers moved Ms. Papa to an interview room, where they handcuffed each of her hands to the arms of a chair. *Id.* at 11. Immediately after they left the room, Ms. Papa began kicking a nearby table, which the officers (who had been watching via surveillance camera) returned to remove. *Id.* Minutes after they left, Ms. Papa proceeded to kick the chair across the room, jump up and down, kick the wall repeatedly, bite her wrists causing blood and bite marks, remove her clothing, urinate on the floor and chair, and hit her head repeatedly on the chair. *Id.* The officers called a team of medics to evaluate and treat Ms. Papa's self-inflicted injuries. *Id.*

Following the events of May 30, 2018, Ms. Papa was charged with resisting arrest and institutional vandalism.[1] *Id.* at 2. Following a bench trial, the court

---

[1] At the time, Ms. Papa was already facing several criminal charges as the result of an incident on April 22, 2018. The charges were consolidated with those in the instant matter for trial, conviction, and sentencing. Criminal Trial Op. at 1. The May 30, 2018 events, and the convictions that followed, form the factual basis of a separate civil action and appeal to this Court. *See Moon Twp. v. Papa* (Pa. Cmwlth., No. 234 C.D. 2022, filed March 3, 2023).

convicted Ms. Papa of both counts and, on March 27, 2019, sentenced her to concurrent one-year terms of probation.[2] *Id.* at 3.

On September 23, 2020, Ms. Papa filed a *pro se*[3] Complaint alleging that Officers Litterini and DeRusso were liable for false arrest, negligence, defamation, intentional infliction of emotional distress, and malicious prosecution. Original Record (O.R.), Item No. 10. Ms. Papa further alleged that the Borough was liable for the officers' conduct as their employer, and was liable in its own right for an additional count of negligence. *See generally id.* ¶¶ 56-70. As a proposed remedy, Ms. Papa requested an award of money damages in an unspecified amount, plus legal costs. *Id.* ¶ 70.

The Borough filed a Motion for Summary Judgment on September 29, 2021.[4] O.R., Item No. 17. Therein, the Borough argues that Coraopolis was governmentally immune from Ms. Papa's claims under what is commonly known as the Political

---

[2] Ms. Papa appealed to the Superior Court, which affirmed the convictions. *See Commonwealth v. Amanda Lynn Wasserman* (Pa. Super., No. 1407 WDA 2019, filed Nov. 12, 2021), *appeal denied*, 275 A.3d 487 (Pa. 2022).

[3] While examining Ms. Papa's claims, we are mindful of the rule that "allegations of a *pro se* complainant are held to a less stringent standard than that applied to pleadings filed by attorneys." *Rosario v. Beard*, 920 A.2d 931, 934 (Pa. Cmwlth. 2007) (quoting *Danysh v. Dep't of Corr.*, 845 A.2d 260, 262-63 (Pa. Cmwlth. 2004), *aff'd*, 881 A.2d 1263 (Pa. 2005)). Where a *pro se* complainant's allegations are adequately set forth, they will not be dismissed just because they are not artfully drafted. *Hill v. Thorne*, 635 A.2d 186, 189 (Pa. Super. 1993).

[4] Previously, the Borough removed the case to the United States Court for the Western District of Pennsylvania on October 21, 2020. O.R., Item No. 11. In a January 8, 2021 order, the district court remanded the case to state court. *Id.*, Item No. 12.

Subdivision Tort Claims Act (Tort Claims Act), 42 Pa.C.S. §§ 8541-8542.[5] *Id.* ¶¶ 24-25. The Borough further asserts that Officers Litterini and DeRusso are protected by official immunity pursuant to Section 8545 of the Tort Claims Act.[6] *Id.* ¶¶ 26-28. Finally, the Borough claims that each of Ms. Papa's claims fail on their merits because Ms. Papa has not, and cannot, allege facts necessary to establish the elements of each claim. *See generally id.* ¶¶ 35-64.

On December 30, 2021, the Trial Court issued an order denying the Borough's summary judgment motion. O.R., Item No. 22. The order consisted simply of a printout of the Borough's proposed order granting summary judgment, with the text crossed out and the single word "denied" written in the margin. *Id.*

The Borough subsequently petitioned this Court for permission to appeal. In a May 19, 2022 *per curiam* order, this Court granted its petition. Our order directed the parties to submit briefs on whether the Borough and its employees are immune from suit, and on whether Ms. Papa's suit constituted a collateral attack on her convictions.[7]

---

[5] Section 8541 provides that, except as otherwise specified in the Tort Claims Act, "no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." 42 Pa.C.S. § 8541. Section 8542 provides certain exceptions, all of which involve negligence claims and which are not applicable to the instant matter. 42 Pa.C.S. § 8542.

[6] Section 8545 provides that an "employee of a local agency is liable for civil damages on account of any injury to a person or property caused by acts of the employee which are within the scope of his office or duties only to the same extent as his employing local agency and subject to the limitations imposed by [the Tort Claims Act]." 42 Pa.C.S. § 8545.

[7] The order also directed the parties to submit briefs on the question of whether "the Pennsylvania Constitution provides a private right of action to" Ms. Papa. This is a reference to one of Ms. Papa's claims in her related suit against Moon Township.

4

## II. Issues

The Borough argues that summary judgment was improperly denied because the Borough and its employees are immune from suit as a matter of law, and because Ms. Papa's claims constitute an improper collateral attack on her criminal conviction.[8]

## III. Discussion

Pennsylvania Rule of Civil Procedure 1035.2 provides:

> After the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law
> (1) whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or
> (2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury.

Pa.R.Civ.P. 1035.2. A party seeking to avoid summary judgment must show by specific facts in the depositions, answers to interrogatories, admissions, or affidavits that there is a genuine issue for trial. *Moon v. Dauphin Cnty.*, 129 A.3d 16, 28 (Pa. Cmwlth. 2015).

Here, the Borough moved for summary judgment on the basis that Ms. Papa's claims suffer from legal defects that "could not be cured through any further discovery in this case." O.R., Item No. 17, Motion ¶ 7. Ms. Papa countered that summary judgment would be inappropriate because she did not have an opportunity

---

[8] Our standard of review on appeal from the grant or denial of summary judgment is *de novo*, and our scope of review is plenary. *Clean Air Council v. Sunoco Pipeline L.P.*, 185 A.3d 478, 485 (Pa. Cmwlth. 2018). Our review is limited to determining whether the trial court committed an error of law or abuse of discretion. *Id.*

to substantiate her allegations of abusive treatment at the hands of the Borough and its employees. O.R., Item No. 20, Response ¶¶ 11-12.

Pursuant to Pa.R.A.P. 1925(a),[9] the Trial Court submitted a single sentence statement explaining its denial of summary judgment, which reads as follows: "When [the Borough] filed [its] [M]otion for [S]ummary [J]udgment, discovery was not closed and it was therefore not free and clear from all doubt that [the Township or its employees] were entitled to summary judgment." The memorandum cites a single case, *Brown v. Tunkhannock Township*, 665 A.2d 1318 (Pa. Cmwlth. 1995), which is inapposite to the issues at hand.[10]

It is important to note that the Trial Court did not address any of the issues set forth in this Court's order granting the interlocutory appeal such as immunity and collateral attack defenses. Furthermore, the Trial Court offers an incomplete statement of when summary judgment is appropriate. The close of discovery is not the only condition allowing summary judgment to be considered. Pursuant to Rule of Civil Procedure 1035.2(1), summary judgment is equally appropriate when "there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery." Pa.R.Civ.P.

---

[9] Pa.R.A.P. 1925(a) provides that, upon the receipt of a notice of appeal, "the judge who entered the order giving rise to the notice of appeal, if the reasons for the order do not already appear of record, shall . . . file of record at least a brief opinion of the reasons for the order."

[10] The Trial Court's reliance on *Brown* in this matter is perplexing as *Brown* does not discuss the status of discovery or its impact on summary judgment. *Brown* involved a plaintiff who sustained injuries at a softball game on township-owned land and brought an action in negligence against the township. 665 A.2d at 1319. After the close of pleadings and a single deposition, the township moved for summary judgment, asserting immunity pursuant to the Recreational Use of Land and Water Act (RULWA), Act of February 2, 1966, P.L. (1965) 1860, *as amended*, 68 P.S. §§ 477-1–477-8. 665 A.2d at 1319. The trial court granted the township's motion. *Id.* at 1319-20. This Court reversed, holding that the ballpark was "improved land" and therefore outside the scope of the RULWA. *Id.* at 1322.

6

1035.2(1). The Trial Court's statement fails to provide any insight or explanation as to why Rule 1035.2(1) is inapplicable in this instance. For the reasons set forth below, we have determined that the Borough and officers are immune from suit, that Ms. Papa's claims fail as a matter of law, and that further discovery would serve no purpose.

## A. **Governmental Immunity**

Section 8541 of the Tort Claims Act provides the general rule of government liability: "Except as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." 42 Pa. C.S. § 8541. The following section provides eight exceptions, all of which involve acts of negligence.[11] 42 Pa.C.S. § 8542. The clear legislative intent to insulate local agencies and their employees from tort claims mandates that courts construe those exceptions narrowly. *Cornelius v. Roberts*, 71 A.3d 345, 350 (Pa. Cmwlth. 2013).

Instantly, Ms. Papa alleges that the Borough is liable for the torts committed by Officers Litterini and DeRusso in its capacity as their employer. Ms. Papa also alleges that the Borough is liable in its own right for negligence due to its failure to heed her calls to investigate the officers' alleged wrongdoing. Not one of the

---

[11] The exceptions include: (i) the operation of motor vehicles; (ii) the care, custody, or control of personal property; (iii) the care, custody or control of real property; (iv) a dangerous condition of trees, traffic controls and street lighting; (v) a dangerous condition of steam, sewer, water, gas or electric systems; (vi) a dangerous condition of streets; (vii) a dangerous condition of sidewalks; and (viii) the care, custody or control of animals. 42 Pa.C.S. § 8542(b).

7

allegations falls under Section 8542's exceptions to governmental immunity.[12] The Borough is therefore immune from all of Ms. Papa's claims.[13]

## B. Official Immunity

The general rule of official immunity is stated in Section 8545 of the Tort Claims Act: "An employee of a local agency is liable for civil damages on account

---

[12] Ms. Papa's negligence claim against the Borough itself would be unavailing even if immunity did not apply. Specifically, Ms. Papa alleges that the Borough is in breach of a duty "to oversee its employees including investigating complaints of misconduct by its employees and take appropriate action." O.R., Item No. 10, Complaint ¶ 67. In support, Ms. Papa cites Section 1123.1 of the Borough Code, which provides that "[t]he mayor shall have full charge and control of the chief of police and the police force," and that the mayor "may delegate to the chief of police or other officer supervision over and instruction to subordinate officers in the manner of performing their duties." 8 Pa.C.S. § 1123.1(a)-(c). There is nothing in that provision, or elsewhere in the Borough Code, that imposes an affirmative duty on municipal authorities to take disciplinary action anytime that someone alleges misconduct. A borough's power to investigate or discipline a police officer is governed by Section 1124(a) of the Borough Code, which provides that a borough mayor "*may*, for cause and without pay, suspend any police officers until the succeeding regular meeting of the council at which time or later the council *may* . . . suspend, discharge, reduce in rank or reinstate with pay the police officers." 8 Pa.C.S. § 1124(a) (emphases added). As made clear by the operative verb "may," the Borough Code authorizes, but does not require, a borough government to take such action.

[13] In opposition to the Borough's assertion of immunity, Ms. Papa also argues that under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), local governments "may be sued in certain limited circumstances." O.R., Item No. 20, Response ¶ 13. While that is true, *Monell* concerned civil actions for loss of federal constitutional rights pursuant to 42 U.S.C. § 1983. Ms. Papa is not pursuing federal claims, which is why this case was remanded to state court.

Ms. Papa also opposes immunity on the basis of two new allegations against the Borough: that it had failed to place her under a female police officer's supervision, and that one of the police officers at the station on the evening of Ms. Papa's arrest was the subject of a sexual misconduct complaint. O.R., Item No. 20, Response ¶¶ 15, 16. It is unclear how these allegations relate to the question of whether the Borough is immune from her suit. If Ms. Papa wished to argue that the alleged conduct constituted additional torts, then the allegations should be included in an amended complaint. Even if the Trial Court were to grant Ms. Papa leave to amend, however, the averments would fail to support the argument; Ms. Papa does not allege that she was harmed by the absence of a female officer, or that she had any interactions with the officer accused of sexual misconduct. The new allegations are therefore irrelevant to the question of whether the Borough is immune.

of any injury to a person or property caused by acts of the employee which are within the scope of his office or duties only to the same extent as his employing local agency." 42 Pa.C.S. § 8545. That limitation is waived if an injury was caused by an act that is judicially determined to have "constituted a crime, actual fraud, actual malice or willful misconduct." 42 Pa.C.S. § 8550. For purposes of Section 8550, "willful misconduct" is synonymous with "intentional tort"; that is, the actor "desired to bring about the result that followed, or at least that he was aware that it was substantially certain to ensue." *Balletta v. Spadoni*, 47 A.3d 183, 196 (Pa. Cmwlth. 2012). If the claim does not rise to the level of willful misconduct, but, instead, is based on negligence, then the employee enjoys governmental immunity to the same extent as a local agency, and the negligence claim must meet one of the eight enumerated exceptions in Section 8542(b). *Orange Stones Co. v. City of Reading*, 87 A.3d 1014, 1023 (Pa. Cmwlth. 2014).

Instantly, Ms. Papa alleges that Officers Litterini and DeRusso are personally liable for false arrest, negligence, defamation, intentional infliction of emotional distress, and malicious prosecution. The negligence count against the officers, like the one against the Borough itself, does not fall under any of the Section 8542(b) exceptions. Officers Litterini and DeRusso are therefore immune from that claim.[14]

---

[14] Like the negligence claim against the Borough itself, the claim against the officers would be unavailing even if immunity did not apply. In her Complaint, Ms. Papa alleges that the officers are liable for negligence through a variety of bad acts. First, the Complaint states that the officers violated Section 302(a)(2) of the Act of July 9, 1976, P.L. 817, *as amended*, which provides that a peace officer who personally observes someone in apparent need of immediate mental health treatment "may take such person to an approved facility for an emergency examination." 50 P.S. § 7302(a)(2). As made clear by the operative verb "may," Section 302(a)(2) grants officers the *discretion* to take a person to an approved facility for an emergency examination; it does not require them to do so.

**(Footnote continued on next page…)**

As the remaining counts all involve allegations of intentional acts, they may only survive if it is judicially determined that the officers' actions constituted willful misconduct; that is, intentional torts. For the following reasons, we conclude that the averments in Ms. Papa's Complaint fail as a matter of law to support any such determination.

### 1. False Arrest

The necessary elements of a cause of action for false arrest are: (1) the detention of another person, and (2) the unlawfulness of such detention. *Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994). An arrest that is based upon probable cause is legally justified, regardless of whether the individual arrested was eventually found guilty. *Id.*

---

Ms. Papa also alleges that Officers Litterini and DeRusso "left [a] urine-soaked towel around the head of [Ms. Papa]," and that they later pushed the towel into her face. O.R., Item No. 10, Complaint ¶¶ 35-36. Ms. Papa later alleged that their actions constitute attempted "strangulation." O.R., Item No. 20, Response ¶ 12. In support, Ms. Papa refers to images from the surveillance footage of the interview room during her detention. That footage does not support Ms. Papa's version of events. At 8:18 p.m. on the evening of her arrest, one of the emergency medical technicians who were called to evaluate Ms. Papa is seen placing a towel on the floor, presumably to clean up the puddle of urine. O.R., Item No. 21, Reply Brief, Exhibit B. At 8:51 p.m., Ms. Papa is seen placing the towel around her own neck and shoulders. *Id.* At 9:33 p.m., Ms. Papa is seen kicking Officer DeRusso while he appears to be attempting to remove Ms. Papa's right handcuff; seconds later, he is seen lifting one end of the towel and *holding it in front of* Ms. Papa's face, but not pushing it into her face. *Id.*

While we and the Trial Court are required to view the record in the light most favorable to Ms. Papa, we are under no obligation to adopt a version of events that is blatantly contradicted by video evidence. *See Sellers v. Twp. of Abington*, 106 A.3d 679, 690 (Pa. 2014) (finding no genuine issue of material fact where an in-car camera recording "blatantly contradicts" the nonmoving party's version of events) (citing *Scott v. Harris*, 550 U.S. 372, 380 (2007)). Consequently, the evidence referred to by Ms. Papa does not establish any element of a negligence claim.

Ms. Papa argues that Officers Litterini and DeRusso are liable for false arrest because, *inter alia*, her assault charge was eventually withdrawn.[15]  O.R., Item No. 10, Complaint ¶ 20.  As stated, however, a charge need not result in a conviction for probable cause to have existed.  When the officers arrived at Ms. Papa's home, they observed scratches on Mr. Wasserman's skin, which Mr. Wasserman attributed to Ms. Papa's assault.  Those signs of injury and the coinciding evidence of the broken objects strewn across Ms. Papa's and Mr. Wasserman's home were more than enough to establish a probable cause to arrest for domestic violence.  For this reason, Ms. Papa's allegations cannot support an inference that the officers are liable for false arrest.

## 2. Defamation

In a defamation action, the plaintiff carries the burden of showing that an allegedly defamatory statement was false.  *Am. Future Sys., Inc. v. Better Bus. Bureau of Pa.*, 923 A.2d 389, 396 n.8 (Pa. 2007) (citing *Phila. Newspapers v. Hepps*, 475 U.S. 767, 777 (1986)).  Ms. Papa alleges that a Coraopolis police officer informed her employer that Ms. Papa was facing criminal charges, which is a true statement.[16]  The allegations therefore cannot support an inference that the officers are liable for defamation.

---

[15] Ms. Papa's husband did not pursue the domestic violence charge.  As for Ms. Papa's charges for resisting arrest and institutional vandalism, a cause of action for false arrest obviously cannot be made because she was convicted of those charges.  *See McGriff v. Vidovich*, 699 A.2d 797, 800 (Pa. Cmwlth. 1997) (explaining that "[p]robable cause to arrest is conclusively established to have existed at time that arrest was made, which thus precludes action for false arrest, if there is guilty plea or conviction").

[16] Specifically, the Complaint avers that Ms. Papa's husband was told that a Coraopolis police officer, "possibly" Sergeant DeRusso, "had informed [Ms. Papa's] employer of the pending criminal action."  O.R., Item No. 10 ¶ 41.

### 3. Intentional Infliction of Emotional Distress

A person is liable for intentional infliction of emotional distress if, by extreme and outrageous conduct, that person intentionally or recklessly causes severe or emotional distress to another. *Carson v. City of Phila.*, 574 A.2d 1184, 1187 (Pa. Cmwlth. 1990). Conduct or statements are "outrageous" if they "go beyond all bounds of decency and are regarded as utterly intolerable in a civilized community." *Id.* Before the question reaches a jury, it is for the court to determine whether the defendant's conduct may reasonably be regarded so extreme and outrageous as to permit recovery. *Swisher v. Pitz*, 868 A.2d 1228, 1231 (Pa. Super. 2005).

Ms. Papa alleges that Officers Litterini and DeRusso engaged in "outrageous conduct" when they arrested and detained her. O.R., Item No. 10, Complaint ¶ 46. Because the officers had probable cause to arrest her, the conduct was entirely consistent with their duties as law enforcement officers. No reasonable inference can be made that the performance of official duties constitutes extreme or outrageous conduct.

### 4. Malicious Prosecution

To succeed in an action for malicious prosecution, a plaintiff must prove that the defendant instituted proceedings against the plaintiff (1) without probable cause, (2) with malice, and that (3) the proceedings terminated in favor of the plaintiff. *Kelley v. General Teamsters, Chauffeurs, & Helpers, Local Union 249*, 544 A.2d 940, 941 (Pa. 1988).

Instantly, Ms. Papa alleges that Officers Litterini and DeRusso are liable for malicious prosecution because they "initiated criminal proceedings" against her, and that she "expects" a ruling by the Superior Court in her favor on the appeal from those charges. O.R., Item No. 10, Complaint ¶¶ 51, 54. The Superior Court affirmed

the convictions; thus, the proceedings did not terminate in her favor, and no reasonable inference can be made that the officers are liable for malicious prosecution.

For the foregoing reasons, all of Ms. Papa's claims fail as a matter of law; consequently, there is nothing in the record to justify a judicial determination that Officers Litterini or DeRusso engaged in a crime, actual fraud, actual malice, or willful misconduct. Pursuant to Section 8545 of the Tort Claims Act, they are officially immune from Ms. Papa's claims.

## C. Collateral Estoppel

Finally, the Borough argues that Ms. Papa's claims constitute an improper collateral attack on her criminal conviction. As authority for this assertion, the Borough cites *Weaver v. Franklin County*, 918 A.2d 194, 196 (Pa. Cmwlth. 2007). In that case, a prison inmate sued a county government for conspiracy, negligence, intentional infliction of emotional distress, and libel following his conviction and imprisonment for sexual assault. In rejecting his claims, this Court concluded that the plaintiff's "inability to aver that the underlying conviction was invalidated" was an absolute bar to recovery. *Id.* at 203. The principle underlying that conclusion, commonly referred to as collateral estoppel, is that a party may not relitigate an issue that has already been resolved in another proceeding. *See Shaffer v. Smith*, 673 A.2d 872, 874 (Pa. 1996) (noting "that a criminal conviction collaterally estops a defendant from denying his acts in a subsequent civil trial").

Since it has already been demonstrated that Ms. Papa's claims fail as a matter of law, it is not necessary to engage in a separate collateral estoppel analysis of those claims. However, for the sake of thoroughness, we note that underlying every one of Ms. Papa's claims is an effort to negate the legality and propriety of her arrest and

conviction, and the later determination that she violated the terms of her probation. This Court is powerless to undo the outcome of valid criminal proceedings. The purpose of civil actions such as the one brought by Ms. Papa is not to provide second or third opportunities to relitigate criminal convictions after the proper avenues of appeal have been exhausted.

## IV. Conclusion

The Borough and its employees are governmentally and officially immune from suit pursuant to the Tort Claims Act. Ms. Papa's claims also fail as they constitute a collateral attack on the outcome of valid criminal proceedings. Finally, as the allegations fail as a matter of law, any further discovery would only delay the inevitable dismissal of this case. Accordingly, we reverse the Trial Court's order and remand for entry of judgment in favor of the Borough.

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Borough of Coraopolis, | : | |
| Officer Robert Litterini | : | |
| and Officer Nicholas DeRusso, | : | |
| Appellants | : | |
| | : | |
| v. | : | No. 233 C.D. 2022 |
| | : | |
| Amanda Papa | : | |

**PER CURIAM**

# O R D E R

AND NOW, this 3rd day of March, 2023, the order of the Court of Common Pleas of Allegheny County (Trial Court) in the above-captioned matter, dated December 30, 2021, is hereby REVERSED.  The case is remanded to the Trial Court for the entry of judgment in favor of Appellants.

Jurisdiction relinquished.